**E. Wayne HAGE and Jean N. Hage, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1470 L.**

United States Court of Federal Claims.

June 11, 1996.

738

Mark L. Pollot, Boise, Idaho, for plaintiffs. John E. Marvel, Elko, N.V., was of counsel.

Dorothy R. Burakreis, General Litigation Section, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., for defendant. Susan V. Cook, David F. Shuey, Department of Justice and Eric C. Olson, Department of Agriculture, were of counsel.

Thomas D. Lustig, National Wildlife Federation, for amici curiae, State of Nevada, National Wildlife Federation, Nevada Wildlife Federation, Natural Resources Defense Council, and Sierra Club. Beth Wendel, National Wildlife Federation and Johanna H. Wald, Natural Resources Defense Council, were of counsel. David Creekman, Deputy Attorney General, for amici curiae State Engineer of the State of Nevada.

## OPINION

SMITH, Chief Judge.

This matter is before the court on the State of Nevada's and various environmental groups' motion to intervene pursuant to RCFC 24(a) and (b). Previously the court orally denied the motion to intervene but granted the applicants *amici curiae* status. This written opinion is issued because the court believes it may be useful in this case and to the bar generally to outline the extent of participation permitted by *amici* and to explain the reason for denial of the applicants' motion.

## FACTS

E. Wayne & Jean N. Hage filed this suit alleging constitutional, contractual and statutory causes of action. First, plaintiffs claimed that the defendant took compensable property interests in their grazing permit, water rights, ditch rights-of-way, rangeland forage, cattle and ranch in Nye County, Nevada. Second, the plaintiffs maintained that their grazing permit was a contract which the defendant breached, entitling them to damages. Third, plaintiffs claimed entitlement to compensation for improvements they made to the public rangeland. Defendant filed a motion for summary judgment on all three claims. On March 8, 1996, this court granted ·in part and denied in part defendant's motion. *See Hage v. United States,* 35 Fed.Cl. 147 (1996).

The Hages' claim is based upon actions undertaken by both the State of Nevada and the federal government. Nevada's Department of Wildlife, with permission from the Forest Service, releases elk and other game animals onto federal rangeland, including the land on which plaintiffs hold grazing permits and preferences. The Hages allege that the release of the elk interferes with their rights under the grazing permit and their vested water rights because the elk reduce the amount of forage and water available to their cattle. The Hages also claim that the defendant illegally overlaps the elk hunting season with the grazing season allowed under their permit.[1] The overlap, argues the Hages, interferes with their rights under the permit for exclusive use of the land and with their ability to comply with the permit terms.

Shortly after this case was filed, the State of Nevada, National Wildlife Federation, Natural Resources Defense Council, Nevada Wildlife Federation and the Sierra Club filed a motion to intervene in this matter on behalf of the United States pursuant to Rule 24 of the Rules of the United States Court of Federal Claims. The applicants claimed an interest in the same property rights claimed by plaintiffs, specifically the right to the beneficial·use of water claimed by plaintiffs, the right to the use and enjoyment of the rangeland and forage encompassed by plaintiffs' grazing permit and the right to determine the ownership of water rights which plaintiffs claimed they owned.

After consideration of the briefs and oral argument, this court denied the applicants intervenor status but allowed the applicants to participate as *amici curiae.* On March 3, 1993, this court issued an order allowing *amici* to file briefs regarding discovery disputes fifteen days following the filing of the brief they were supporting. The order also permitted *amici* to make a motion to the court if it wishes to participate more extensively in the proceedings of the case. The court also has allowed *amici* to file briefs supporting defendant's motion for summary judgment, to participate at oral argument, to file status reports regarding the Monitor Valley water rights adjudication, and to participate with the parties in telephone status conferences.

---

1. The duration of the hunting season is set by the State through the Nevada Department of Wildlife.

## DISCUSSION

The applicants sought to intervene as a matter of right pursuant to RCFC 24(a). The applicants argued that they satisfied each element of RCFC 24(a) and, therefore, warranted intervenor status. Rule 24(a) allows intervention if, upon timely application,

the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

RCFC 24(a). The applicants satisfied the first requirement by filing their motion in a timely fashion, three months after plaintiffs filed their complaint. The applicants also claimed that the Department of Justice would not adequately represent their interests.

The Court of Appeals for the Federal Circuit interpreted Rule 24 in *American Maritime Transport, Inc. v. United States,* 870 F.2d 1559 (Fed.Cir.1989) (*American Transport*). The court determined that to intervene as a matter of right, an applicant must evidence a direct, immediate, legally protectable interest in the proceedings. The applicant must demonstrate that he would "either gain or lose by the *direct* legal operation and effect of the judgment." *Id.* at 1561 (citations omitted) (emphasis in original). A court cannot allow intervention to protect an indirect or contingent interest. *Id.*

In a situation analogous to the present case, Judge Margolis held in *Karuk Tribe of California v. United States,* 27 Fed. Cl. 429 (1993) (*Karuk Tribe*), that the intervenor-applicants could not meet the *American Transport* standard for intervention pursuant to RCFC 24. In *Karuk Tribe,* the applicant-intervenors, members of the Hoopa Valley Tribe, sought to intervene as defendants. *Id.* at 430. The plaintiffs sought monetary compensation from the United States for an alleged taking of its property when Congress enacted the Settlement Act

of 1988, 25 U.S.C. §§ 1300i to 1300i–11, dividing the former Hoopa Valley Tribe Reservation but excluding the Karuks from sharing in the reservation. *Id.* at 431. The applicants-intervenors argued that a monetary award to the Karuk Tribe would threaten the Hoopas' interest in sharing the benefits of the Settlement Act. The applicants argued that a judgment in favor of plaintiffs could cause Congress to modify the Settlement Act which the Hoopas would be incapable of challenging.[2] *Id.*

Judge Margolis found the applicants' interest to be indirect and contingent upon other events which may never occur as a result of the litigation. As Judge Margolis noted, the singular direct result of a judgment in favor of plaintiff would be a monetary award from the government. *Id.* The applicants only could be affected if Congress modified the provisions of the Settlement Act in such a manner as to take away the Hoopa Valley Tribe's legally protectable rights. *Id.* Judge Margolis found the applicants' interest insufficient for intervention because these events were not certain to occur even if plaintiffs prevailed. *Id.* at 432.

In this litigation, the State of Nevada wished to intervene to protect its interest in the elk, the revenues generated from hunting on federal land, the regulation of hunting seasons and the ability to manage its wildlife and recreational programs. The State also maintained that as a sovereign, it has exclusive right to administer its water policy, control its water supply and determine who owns the water rights at issue. The State claimed that an adverse decision against the federal government coupled with the doctrine of *stare decisis* would lessen its ability to protect those interests in the future.

Similar to *Karuk Tribe,* Nevada alleged possible scenarios that it believed would occur and would adversely affect their interest if plaintiffs prevail. The State of Nevada claimed that, if this court awards a large judgment to plaintiffs, the Forest Service would be discouraged from allowing future

---

**2.** The Hoopas waived claims arising out of the Settlement Act. *See* 25 U.S.C. § 1300i–

1(a)(2)(A)(i).

releases of wildlife on federal lands, to the detriment of Nevada. Or, if this court found that plaintiffs' alleged water rights encompassed the right of plaintiffs' cattle to consume forage, the elk may not have enough forage to eat, which would also destroy the viability of the State's wildlife program. The State also claimed that if this court determined that defendant did take plaintiffs' water right, the State would lose its ability to administer its water policy and control its water supply on federal land.

The environmental group applicants also argued hypothetical repercussions which might result from an adverse judgment and which would adversely affect their interest in the rangeland encompassed by the Hages' permit. The environmental groups claimed an aesthetic injury to their recreational enjoyment of the rangeland caused by the Hages' activities and also professed an interest in the need for a enlightened public policy for protection of the rangelands. The environmental groups maintained that if plaintiffs' claim succeeds, the Forest Service would not vigorously enforce its regulations or support proper land management and grazing policies because of fear of additional lawsuits by ranchers. If the Forest Service is forced to slacken their rangeland management as a consequence of this lawsuit, the environmental groups contend that major range deterioration would result, jeopardizing their members' use and continued enjoyment of the rangeland.

As in *Karuk Tribe*, none of the repercussions described by the State or the environmental groups are certain to develop if plaintiffs succeed. The court agrees that litigation and adverse judgments can affect agencies and their policies, but the court cannot assume that an adverse judgement necessarily will cause the effects which the groups predict. First, the court cannot assume that an adverse judgment would cause the Forest Service to disregard its own regulations and statutory obligations. Also, many possible consequences might result from a judgment either for or against the government.

■ The court found that the applicants could not establish a direct, immediate and legally protectable interest in the proceedings necessary to justify intervention as a matter of right. The only direct result of a victory by plaintiffs would be a monetary award paid by the federal government. The above scenarios described by the State and the environmental groups are indirect and speculative at best. These speculative repercussions are contingent upon policy choices outside of the court's authority. As the court noted in *Hage,* under our constitutional system, the greatest deference must be given to the policy choices of the executive and legislative branches. Only when these policy choices infringe the constitutionally protected liberties of litigants may the courts act with regard to them. For it to be otherwise would transform this constitutional republic into a judicial oligarchy. The courts have never been a proper place to debate public policy, though this may appeal to the judicial ego. Once judges start setting public policy they cease to be the least dangerous branch. *See Hage,* 35 Fed. Cl. at 151, *citing* The Federalist No. 47 (James Madison).

■ The court also determined that an adverse decision would not, through the doctrine of *stare decisis,* preclude the applicants from protecting their interests in the legal arena. The court does not address the legality of the State's wildlife and hunting programs or its water policy. The court does not consider the arguments of the different competing interests for the rangeland. The suit is limited to plaintiffs' Fifth Amendment taking claims and a claim for compensation under 43 U.S.C. § 1752(g). *See Hage v. United States,* 35 Fed. Cl. 147 (1996). If the outcome of this case indirectly causes results disfavored by Nevada or the environmental groups, they may object through the political or administrative process. As this court emphasized in *Hage,* a court, in administering justice, does not shape or seek to influence public policy. *See Hage,* 35 Fed. Cl. at 150–153.

The court also held that the applicants' interests are adequately represented by the Department of Justice (DOJ). The court found a strong similarity between the interests of the applicants and the federal government. All parties vehemently oppose each of

plaintiffs' claims. All parties agree that plaintiffs do not possess the property interests they allege in the water rights, ditch rights-of-way or forage. The parties agree that plaintiffs do not have the right to exclusive use of the grazing allotment or to the beneficial use of the water flowing through the Monitor Valley.

Nevada also argued that because the Forest Service is a multiple use agency it does not represent the interest of the Nevada Department of Wildlife, which solely is dedicated to wildlife resources. The State further claimed that it was not adequately represented by the United States because the United States has mixed objectives in this litigation, one of which is to minimize financial exposure of the federal government. While the court agrees that Nevada and its agencies have different goals than the Forest Service and DOJ, no evidence has been presented that their ultimate objectives in this litigation are different. Indeed, minimizing financial exposure is perhaps the surest sign of adequacy of representation: defeating the plaintiffs' claims is the ultimate goal of both defendant and the applicants. The court, therefore, found that the interest of the applicants did not warrant intervention as of right.

In the alternative, the applicants sought permissive intervention. The court may permit intervention at its discretion if the applicant's claim or defense and the main action have a question of law or fact in common. *See* RCFC 24(b)(2). The applicants, however, do not have a claim against the United States. Also, the court found that intervention would not serve the interests of judicial economy because the applicants merely argue issues raised by the primary parties. *See United States v. American Inst. of Real Estate Appraisers,* 442 F.Supp. 1072 (N.D.Ill.1977). Therefore, the court denied the applicants' motion for permissive intervention.

The court granted the applicants *amici* status to allow the applicants to participate as friends of the court. The court agrees with *amici* that they have specialized knowledge which may be beneficial to the court in the resolution of this case. As in many Fifth Amendment taking cases, the court must look to state law to determine whether plaintiffs have the property interest alleged in the water rights, ditch rights-of-way and forage. *See Hage,* 35 Fed. Cl. at 171–176. The court may also seek *amici's* expertise if the court deems it necessary to determine whether the defendant utilized or permitted third parties to utilize plaintiffs' water rights. The court is confident that defendant and *amici* will work together to inform the court of their position on plaintiffs' property rights claims.

Throughout the rest of this case, *amici* shall bear the burden of demonstrating that they specifically can contribute expertise and arguments not presented by defendant. The court will determine at the appropriate time whether the court will invite *amici* to participate in each subsequent proceeding from the date of this opinion.

While it is the policy of the court that all substantive proceedings in this case are open to the public, including of course *amici,* telephone status conferences concerning discovery and scheduling may be limited to the parties depending upon the logistics and ability to conference in *amici.* Because, however, the court values *amici's* participation, it will make every effort to include *amici* even in these proceedings.

IT IS SO ORDERED.