## United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 96-3915
_____

| | |
|---|---|
| Standard Heating and Air Conditioning Co.; Quality Refrigeration, Inc.; Thermex Corporation; Advance Energy Services, Inc.; Ray N. Welter Heating Co., | * <br> * <br> * <br> * <br> * <br> * <br> * |
| Plaintiffs - Appellees, | * <br> * |
| v. | * <br> * |
| City of Minneapolis; Examination Board of Warm Air Heating Installers; Examination Board of Refrigeration Installers; Board of Examiners and Plumbers, | * Appeal from the United States <br> * District Court for the District <br> * of Minnesota <br> * <br> * <br> * |
| Defendants - Appellees, | * <br> * |
| Minnesota Mechanical Contractors Association; Sheet Metal, Air Conditioning & Roofing Contractors Association; Metro Plumbing-Heating-Cooling Contractors Association, | * <br> * <br> * <br> * <br> * <br> * |
| Intervenors Defendants – Appellants. | * <br> * |

_____

Submitted: November 21, 1997
Filed: February 25, 1998

MURPHY, Circuit Judge.

Three trade associations appeal from the denial of their motion to intervene in a lawsuit brought against the City of Minneapolis and several of its trade licensing boards. Standard Heating and Air Conditioning Co., Quality Refrigeration, Inc., Thermex Corp., Advance Energy Services, Inc., and Ray N. Walter Heating Co. (the companies) sued the city and its examining boards for air heating installers, refrigeration installers, and plumbers to challenge certain ordinances and rules governing apprenticeship, testing, and licensing. We affirm.

Individuals seeking to enter the heating and cooling, refrigeration, and plumbing and gas trades in Minneapolis are subject to licensing standards established by city examination boards. Minneapolis Code §§ 277.770, 277.790, 277.1010, 277.1030, 277.1170, 277.1190. Board rules require that individuals wishing to become journeymen in any of these trades obtain a certificate of competency and show they meet the required standards. Minneapolis Code §§ 277.730, 277.990, 277.1470. The standards mandate, among other things, completion of a four year apprenticeship in the Minnesota State Voluntary Apprenticeship Program established by Minnesota Statute, Chapter 178, and passage of competency examinations administered by the boards. State rules declare that pay rates for apprentices be based on preexisting pay rates and that journeymen participants in the apprenticeship programs be paid according to any applicable collective bargaining agreement, the state prevailing wage, or existing apprenticeship rates. Minnesota Rules Part 5200.0390.

---

[1]The Honorable Patrick Conmy, United States District Judge for the District of North Dakota, sitting by designation.

The companies are engaged in the installation, repair, and maintenance of heating, air conditioning, refrigeration, and ventilation units and employ individuals subject to the requirements and testing of the boards. The companies sued to enjoin the city and its boards from enforcing rules which require participation in a state-approved apprenticeship program and which govern wages and conditions of employment in such programs. They seek a declaratory judgment that the state apprenticeship program and other requirements are preempted by the Employment Retirement Income Security Act of 1994, 29 U.S.C. §§ 1001, et seq., and exceed the authority granted to the boards by the city. They also assert various claims under 42 U.S.C. § 1983 arising from the administration of the rules for competency exams and examination applications, as well as equal protection claims and violations of state and federal antitrust law.

The three trade associations sought to intervene in this action in order to defend the regulations. Their members are businesses of various sizes which together employ approximately 9,500 to 11,500 workers, a substantial number of whom work regularly in Minneapolis. They hire individuals who have completed the challenged apprenticeship program and who submit to the testing and licensing procedures. The associations claim the challenged regulations serve vital safety and economic interests and help maintain high quality work in the affected trades. They argue that resolution of the case in their absence may impair their ability to protect their interests so they are entitled to intervene under Fed. R. Civ. P. 24(a). Otherwise they should be permitted to intervene under Rule 24(b) because their defenses would present common issues of law and fact with those already in the case.

The motion to intervene was denied by the magistrate judge[2] who ruled that the attempted intervenors did not qualify under either Rule 24(a) or (b). Since plaintiffs did not seek elimination of the apprenticeship requirement, they did not implicate a legally cognizable interest of the intervenors. The safety interests asserted by the associations were the same as those of the public and were therefore adequately represented by the defendants, and the intervenors did not allege real concerns about the testing requirements. Intervenors were also denied permissive intervention because they had failed to identify a claim or defense different from those already in the case or to show they had a substantial stake in the issues raised by the plaintiffs. The associations appealed to the district court[3] which affirmed.

On appeal to this court the trade associations raise the same points again. The companies challenge their standing as well as their right to intervene. Article III standing is a prerequisite for intervention in a federal lawsuit, <u>Mausolf v. Babbitt</u>, 85 F.3d 1295, 1300-01 (8th Cir. 1996), and we review the denial of mandatory intervention de novo, <u>United States v. Union Elec. Co.</u>, 64 F.3d 1152, 1158 (8th Cir. 1995). If a party can establish standing, it is entitled to intervene when it has made a timely application and it

> claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). As a practical matter, this means that a party seeking

---

[2]The Honorable Jonathan Lebedoff, United States Magistrate Judge for the District of Minnesota.

[3]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

mandatory intervention must establish that it:

> (1) ha[s] a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties.

Mausolf, 85 F.3d at 1299.

Appellants claim that they have established the injury and causal connection necessary for Article III standing and the interests required for Rule 24(a) intervention since they have an economic interest in the subject matter of the litigation. If participation in apprentice programs were voluntary, employers like them who hire participating workers would have an economic disadvantage because employers could pay lower wages to hire non-participants. Appellants also say their members have invested in the existing education system which is dependent on the regulations, and elimination of the regulations would present safety risks on their members' job sites. Lastly, they claim that the interests they assert may conflict with those of the city and that they therefore should be able to participate in settlement negotiations.[4]

The city and the other defendants have not taken any position on intervention, but the plaintiff companies contend that in addition to lack of standing the trade associations have mischaracterized the complaint by saying it seeks elimination of the apprenticeship requirement and the testing and licensing regulations. Plaintiffs say they only seek to prevent participation in a "State Approved Voluntary Apprentice Program" from being a precondition to take a licensing test for the construction trades. The companies claim that the associations have identified no protectable interest in the operation of a mandatory apprentice program, and that the asserted interests in safe and

---

[4]Counsel indicated at oral argument that the trade associations have been participating in ongoing settlement negotiations despite their lack of intervenor status.

competent work are no different from those of the public, and that the defendants adequately represent any articulated interest.

The interests asserted by the associations concerning the apprenticeship requirement are too speculative to be "direct, substantial and legally protectable" interests as required by Rule 24(a)(2). Union Elec. Co., 64 F.3d at 1161 (quoting Alameda Water & Sanitation Dist. v. Browner, 9 F.3d 88, 90 (10th Cir. 1993)). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Washington Elec. v. Massachusetts Mun. Wholesale Elec., 922 F.2d 92, 97 (2d Cir. 1990).

A sequence of events would have to occur for the interests of the associations to be impacted by a successful challenge to the rules, and the associations have not made an adequate showing that these events are likely. Entities accepting bids may be wary of hiring companies with workers who have not gone through the state apprenticeship program, and a successful challenge to the rules could cause the city to enact new rules that would affect labor costs similarly to the current regulations. Moreover, the associations have presented no evidence of how much the companies could save by using cheaper labor and by how much they would be able to underbid association members. These facts are critical to evaluating the likelihood that the associations' interests will be implicated. Although association members may fear the loss of business or difficulties in recruiting qualified applicants, they have not submitted evidence to support their fears other than the speculative beliefs of several association officers. Their general reliance on economic forces is insufficient to constitute a legally protectable claim.

The asserted interest in safety on job sites also is insufficient because the suit does not threaten to eliminate the apprenticeship requirement completely, and the associations will still remain free to defend their safety interest by hiring only those

who have completed a state approved apprenticeship program.  The associations may also appeal to the government for more stringent safety regulations.  See Wade v. Goldschmidt, 673 F.2d 182, 186 (7th Cir. 1982) (applicants should present economic, safety, and environmental interests to the government bodies since they and "not the courts, are required by statute to evaluate and make decisions as to the priority of the various considerations").

The associations also contend that the challenge to the administration of the competency examinations implicates their interest in not undercutting the effort of members' employees who will have unnecessarily complied with the testing requirements, and other interests not yet apparent due to the vague complaint.  The associations, however, have not presented any affidavits or other evidence of employees it claims would be adversely affected by changes in test procedures, and this asserted interest is therefore speculative.  Cf. United States v. City of Chicago, 870 F.2d 1256, 1260 (7th Cir. 1989) (qualified applicants entitled to intervene in suit involving racially altered test results).  Moreover, the companies' challenge is only to the administration of the examinations and not to the defendants' power to test applicants, and the associations have not explained how their interests would be impaired by any changes in administration alone.  The associations therefore have failed to identify any interest in the challenge to test administration.

Parties who are able to assert an interest in the subject matter of the litigation still may not intervene if the existing parties adequately represent their interests.  Fed. R. Civ. P. 24(a).  Where the interests asserted fall within the realm of "sovereign interests," and the government is a party, a presumption that the government adequately represents the interests of its citizens arises.  See Mausolf, 85 F.3d at 1303; Environmental Defense Fund, Inc. v. Higginson, 631 F.2d 738, 740 (D.C. Cir. 1979).  This presumption will be overcome, however, where the state must balance the applicants' "narrower and more parochial interests" that are "not shared by the general citizenry" against the broad public interest, and the balance may compromise the

applicants' interests. <u>Mille Lacs Band of Chippewa Indians v. Minnesota</u>, 989 F.2d 994, 1001 (8th Cir. 1993); <u>see</u> <u>also</u> <u>Dimond v. District of Columbia</u>, 792 F.2d 179, 193 (D.C. Cir. 1986). The city shares the appellants' interests in safety on job sites and in a regulatory system that guarantees quality work in the trades. These sovereign interests raise the presumption of adequate representation and prevent intervention unless the associations can demonstrate that they have an interest which cannot be subsumed within the general interest of the citizenry. <u>See</u> <u>id</u>.

The associations claim that if the action results in a termination of the training and testing requirements they will incur increased costs from injuries on job sites and that these costs are different from the costs to the general public and that the presumption of adequate representation therefore should not apply. These potential costs are insufficient to overcome presumption that the city adequately represents the appellants' interests, however, because costs arising from on the job injury are the type of costs the government seeks to reduce with its regulatory system. Furthermore, these increased costs to the associations present "no possibl[ility of] divergence between their position" and that of the city because both take the same position in the litigation. <u>Environmental Defense Fund</u>, 631 F.2d at 740.

The appellants assert that their interest in participating in potential settlement negotiations concerning the administration of testing requirements overcomes the presumption of adequate representation. In order to prevail on these grounds the associations must show that their position in the negotiations is not the same as that of the defendants, or that they would represent the asserted interests differently than the city. <u>See</u> <u>Mille Lacs</u>, 989 F.2d at 1001. Testing administration does not force the government to reconcile two opposing sets of interests during settlement. Settlement may result in changes in the way tests are conducted, but the associations and the city share any interest in fair testing procedures that ensure competent workers in the trades. <u>Cf.</u> <u>Mausolf</u>, 85 F.3d 1303-04 (intervenors' interests were inadequately represented

because the government faced the possibility of having to reconcile competing demands on the use of public land).

The associations assert that they can overcome the presumption of adequate representation because the city has not been a very active party in this case. See Mausolf, 85 F.3d at 1303 (citing 7C Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1909 (2d ed. 1986)). They argue the city has not pursued discovery or attempted to clarify the plaintiffs' claims or the relief sought. The city has responded to the complaint and is actively participating in settlement negotiations, however, and the associations offered no example of the type of discovery they might conduct or why it would be superior to the city's representation. Furthermore, there is no indication that a failure to take discovery has rendered the defendants at a disadvantage in the litigation. This record is not like the situation in Mausolf. See id. at 1303.

The associations assert in the alternative that they should have been granted permissive intervention under Rule 24(b)(2) because their claims raise common questions of law and fact to the defenses of the boards and the city. The standard of review for denial of permissive intervention is abuse of discretion. Arrow v. Gambler's Supply, Inc., 55 F.3d 407, 410 (8th Cir. 1989). A party may be allowed to intervene in an action where "an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). The magistrate judge concluded that the economic impact of the regulatory scheme was not at issue and that the appellants' proposed answer to the complaint did not raise any claim or defense that was different from those of the existing parties. The magistrate judge concluded therefore that the additional parties would only be a source of repetition and delay. Both the orders of the magistrate and the district court were based on an accurate assessment of the law and the facts at issue, and it was not an abuse of discretion to deny the motion for permissive intervention.

For the reasons discussed, the interests asserted by the associations are insufficient to require intervention as of right, and the district court did not abuse its discretion in denying the motion for permissive intervention.  The order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.