Walter B. FREEMAN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–39L.

United States Court of Federal Claims.

Aug. 29, 2001.

Richard M. Stephens, Bellevue, WA, attorney of record for plaintiff.

Terry M. Petrie, Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant. David M. Cohen, Director.

Roger Flynn and Jeffrey C. Parsons, Boulder, CO, attorneys for the Siskiyou Regional Education Project and the Mineral Policy Center.

## OPINION

FUTEY, Judge.

This case is before the court on the Siskiyou Regional Education Project's (Project) and the Mineral Policy Center's (MPC) (hereinafter referred to as "the applicants") motion to intervene. The applicants maintain they satisfy the requirements of RCFC 24 for intervention of right and, in the alternative, permissive intervention. Plaintiff asserts the applicants have failed to demonstrate their entitlement to intervention and, even if they could prove this, they lack stand-

ing to join this action. Defendant takes no position on this motion.

### Factual Background [1]

The Project is a non-profit public interest organization with members in 48 states. Its purpose is to preserve, protect, restore and educate the public about the wildlands, rivers, fish and wildlife of the Siskiyou Mountains in southwestern Oregon. MPC is a conservation organization that focuses, in part, on mining operations constructed on public land pursuant to the General Mining Law of 1872. 30 U.S.C. § 29 (1994). MPC acts as a non-profit entity with members nationwide. Plaintiff, Walter B. Freeman, is the alleged owner of 161 mining claims in Josephine County, Oregon. Defendant, the United States, is acting by and through its agent, the United States Forest Service (Forest Service).

Plaintiff contends his parents and other predecessors in interest discovered valuable mineral deposits on public lands open to discovery within the Siskiyou National Forest from 1940 to the early 1970's. At some point, plaintiff allegedly obtained these mineral rights. In October 1992, he filed with the Bureau of Land Management (BLM) an "Application for Mineral Patent of the Rough and Ready Claim Group Josephine County, Oregon" seeking a mineral patent for 151 claims. Plaintiff maintains that on several occasions during 1993 and 1994, he requested BLM to process this application, to no avail. On December 14, 1994, due to a moratorium contained in a Congressional appropriation act, BLM sent notice to mineral patent applicants, including plaintiff, stating it would not process their applications. BLM has continued to refuse plaintiff's application since that date.

Sometime before December 17, 1992, the Forest Service informed plaintiff he could not engage in mining by use of mechanized means without approval of a Plan of Operations (Plan). Plaintiff responded by filing a Plan on December 17, 1992 with administrators of the Siskiyou National Forest, a divi-

---

1. The facts as presented are only relevant to the court's decision on the applicants' motion to intervene.

sion of the Forest Service. This Plan included two phases: (1) removal of a 5,000 ton ore sample for testing purposes, and (2) mining ore at the rate of 40,000 tons per year over a 10–year period. Both phases relied on accessing the mining claims via existing roads built by plaintiff's predecessors in interest.

By letter dated March 28, 1994, the Forest Service informed plaintiff it would delay the Plan until an Environmental Impact Statement (EIS) was prepared under the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.* Plaintiff appealed this decision to the Forest Service, but his challenge was denied. No action was taken on the Plan until January 23, 1997, when the Forest Service requested an amendment to exclude full-scale mining. Plaintiff challenged this request, and while waiting for approval of the Plan, he removed a one-ton bulk sample for evaluation. Plaintiff maintains that subsequent testing concluded that full-scale production would be economically feasible.

On August 4, 1999, the Forest Service issued a final EIS and a Record of Decision denying plaintiff's Plan. The Forest Service, nevertheless, did authorize the removal of a 5,000 ton sample from the mining site to be extricated without using the established roads to the site. All equipment and personnel had to be transported by helicopter. After completion of this sampling, plaintiff could submit a new Plan. Plaintiff objects to this final decision and contends it is the equivalent of a denial of the entire Plan. He appealed the decision to the Forest Service and again was denied. The applicants also filed an appeal arguing: (1) plaintiff has not proved a valuable mineral deposit, and (2) the Forest Service should request the Department of the Interior to initiate a mineral contest action. This appeal was also denied.

Plaintiff asserts it would be futile to file another Plan because the Forest Service has unequivocally expressed its objection to plaintiff's mining claims. On January 22, 2001, therefore, plaintiff filed a complaint with this court asserting a takings claim with four counts: (1) taking of access to the established roads to the mineral site; (2) taking of mining claims by denying the Plan and preventing mining at the site; (3) taking of ore and minerals by denying his right to mine such materials; and (4) temporary taking of his rights to the mineral patent by refusing to act on said patent. Plaintiff seeks just compensation for these claims.

Defendant filed its answer on April 24, 2001. On May 15, 2001, the applicants submitted their motion to intervene as a matter of right or per permissive intervention. They allege their members use and enjoy the public lands subject to plaintiff's mining claims. Specifically, the Project asserts its members utilize the lands and waters for fishing, swimming, camping, kayaking, nature study, scientific study, photography, hiking and for other recreation, education and aesthetic purposes. It contends its members' use and enjoyment will be significantly and adversely affected, if not precluded altogether, if plaintiff is successful in this case.

In addition, the Project maintains its members work for and direct the Siskiyou Field Institute (Institute), a program that offers science-based courses focusing on the unique natural history of the Siskiyou Mountains. Since 1997, the Institute has conducted classes on botany, geology, wildlife, and natural history of the lands subject to plaintiff's mining claims. The Project asserts that if plaintiff is successful, the Institute's classes will have to cease because defendant will be obligated to transfer the lands to plaintiff. Moreover, the Project argues its members hold special use permits from the Forest Service to conduct guided outfitter trips into the lands claimed by plaintiff. It contends these trips and the permits will be eliminated if the court concludes plaintiff has a valid mining claim.

MPC alleges its members use the lands for hiking, aesthetic enjoyment, nature and scientific study, photography and other recreation, education, and aesthetic purposes. It maintains that if plaintiff is successful, its interests will be significantly and adversely affected, if not precluded altogether.

*Discussion*

RCFC 24 explains this court's requirements for intervention, allowing it as a matter of right or permissively. This rule is

modeled after Federal Rules of Civil Procedure (FRCP) Rule 24. *See Jay v. Sec'y of HHS,* 998 F.2d 979, 982 (Fed.Cir.1993); *Imperial Van Lines Int'l, Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir.1987). Intervention has historically been disfavored because the court has no jurisdiction over cases between private parties. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 67, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Indeed, the court is restricted to adjudicating "public rights." *Id.* Moreover, given the court's limited jurisdiction under the Tucker Act, the appropriateness of modeling the court's third-party practice rules on the FRCP has been questioned. *Anderson Columbia Envtl., Inc. v. United States,* 42 Fed.Cl. 880, 881–82 (1999).

The applicants maintain they are entitled to intervention of right because their interests in the land will be adversely affected if plaintiff succeeds in this case. In the alternative, the applicants assert they meet the requirements of permissive intervention. Plaintiff argues the applicants fail to satisfy the requirements of RCFC 24, so they cannot intervene in this case. Plaintiff also contends that, even if the applicants establish their right to intervene, they lack standing.

## I. Intervention of Right

The applicants first seek to intervene as a matter of right pursuant to RCFC 24(a), which provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

RCFC 24(a). If the applicants satisfy each element of RCFC 24(a)(1) or (a)(2), the court is without discretion and must permit them to intervene in the current suit, assuming that they can also prove standing.

The threshold question in this analysis is whether the applicants' request to intervene is timely. RCFC 24(a) ("upon timely application ... "). In evaluating timeliness, the court must consider three factors: (1) the length of delay in making the application for intervention; (2) the prejudice to the existing parties from intervention versus the prejudice to the would-be intervenor if intervention is denied; and (3) any other unusual circumstances militating in favor or against intervention. *Standard Space Platforms Corp. v. United States,* 35 Fed.Cl. 463, 466 (1996) (citing *Belton Indus. Inc. v. United States,* 6 F.3d 756, 762 (Fed.Cir.1993)).

The applicants' motion comes less than four months after plaintiff filed the complaint, and approximately three weeks subsequent to when the government offered its answer. *See Hage v. United States,* 35 Fed. Cl. 737, 740 (1996) (finding that the applicants filed their motion in a timely fashion because it was submitted three months after the plaintiff filed its complaint). The court concludes this is a reasonable period of time. Also, any prejudice to the existing parties would be minimal since there are no pending dispositive motions. Furthermore, the court cannot discern any unusual circumstances that militate in favor or against intervention. As plaintiff has not contested the timeliness of the applicants' motion, and since the factors favor the applicants anyway, the court concludes the application for intervention is timely.

After considering timeliness, the court must determine whether the applicants satisfy RCFC 24(a)(1) or (a)(2). The applicants do not assert that a statute of the United States confers them an unconditional right to intervene, and there appears to be no applicable statute. RCFC 24(a)(1), therefore, is inapposite and the applicants must establish the elements of RCFC 24(a)(2) to prove intervention of right. Specifically, they must show that: (1) they have an interest relating to the property or transaction that is the subject of the action; (2) without intervention the disposition of the action may, as a practical matter, impair or impede the applicants' ability to protect that interest; and (3) their

interest is inadequately represented by the existing parties. RCFC 24(a)(2).

■ With respect to the first element, the applicants must prove an interest related to the property that is direct, immediate, and legally protectable. *See Am. Maritime Transport, Inc. v. United States,* 870 F.2d 1559, 1561 (Fed.Cir.1989). Intervention is not allowed if the applicants' interest is merely indirect or contingent. *Id.* The applicants must further demonstrate that they would gain or lose by the direct legal operation and effect of the judgment. *Id.*

■ The applicants claim a direct interest in the land because their members utilize it for fishing, swimming, camping, kayaking, nature study, scientific study, photography, hiking and other recreational and aesthetic purposes. Also, the Siskiyou Field Group, a program of the Project, has conducted educational classes on the lands in question. In addition, certain members of the Project have special use permits to conduct guided outfitter tours in the area. The Project asserts that if plaintiff succeeds on the merits its business will be permanently curtailed.

Although the applicants appear to have some interest in the disputed lands, said interest is indirect at best. Moreover, the applicants have not demonstrated how they would gain or lose by the direct legal operation and effect of the judgment. *See Am. Maritime,* 870 F.2d at 1561. The applicants maintain that if this court holds that plaintiff has a valid mining claim, it would destroy their interest in the land because the Secretary of the Interior (Secretary) would be forced to issue plaintiff a patent. This assertion is misguided and unpersuasive. All plaintiff is seeking in this case is just compensation for his takings claim. The court will have to determine if plaintiff's mining claims are valid, but a ruling in favor of plaintiff will only mean he is entitled to payment. The court has no power to order the Secretary to grant plaintiff a patent for these lands. Also, the court cannot usurp the role of Congress, which has issued moratoria pro-

hibiting such patents since 1994. Indeed, as plaintiff admits, if he is successful in this case, ownership of the disputed lands will return to the federal government upon payment of just compensation.[2] The applicants cannot show that payment of just compensation adversely affects them in any way.

The applicants, therefore, cannot satisfy the first element of RCFC 24(a)(2). This finding precludes them from intervention of right. Nevertheless, assuming they could meet this requirement they still fail to establish the remaining two elements.

The second element requires them to demonstrate that they are "so situated that the disposition of the action may, as a practical matter impair or impede [their] ability to protect that interest." RCFC 24(a)(2). When analyzing this element, the court has considered the impact of *stare decisis* and the ability of the applicants to utilize the political or administrative process to redress their claim. *Hage,* 35 Fed.Cl. at 741. This case is limited to a determination of just compensation. Such an award would not set precedent that impedes or impairs the applicants' ability to protect their interests.

Moreover, the applicants could seek recourse through the political process. They concede in their motion that, "Currently, the federal government is precluded from processing certain mineral patent applications under a congressional moratorium contained in the yearly Interior Department appropriations bill signed by the previous Administration."[3] Regardless of whether the moratorium is renewed by the current administration, the political process remains a viable option for the applicants. *United States v. Shumway,* 199 F.3d 1093, 1101 (9th Cir.1999) (citing *Swanson v. Babbitt,* 3 F.3d 1348 (9th Cir.1993)). So long as there is an opportunity to influence public policy, the chance for recourse still exists.

As for the third element, the applicants are unable to show that their interests are inadequately represented by the existing parties.

**2.** Opposition To Motion To Intervene By The Siskiyou Regional Education Project And The Mineral Policy Center at 10.

**3.** Motion To Intervene Of The Siskiyou Project And Mineral Policy Center And Memorandum In Support Thereof at 11, n. 3.

# 310

RCFC 24(a)(2). Some courts have held that the burden of demonstrating inadequate representation is minimal, *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir.1983) (citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)), however, "when the government is a party, it is presumed to represent the would-be intervenor's interest." *Anderson,* 42 Fed.Cl. at 883 (citing *Standard Heating & Air Conditioning Co. v. City of Minneapolis,* 137 F.3d 567, 572 (8th Cir.1998)). The applicants may rebut the presumption of adequate representation through a showing of collusion, adversity of interest, or nonfeasance. *Id.* (citing *Massachusetts School of Law at Andover, Inc. v. United States,* 118 F.3d 776, 783 (D.C.Cir.1997); *Edwards v. City of Houston,* 78 F.3d 983, 1005 (5th Cir.1996)). The applicants have the burden to demonstrate that these factors exist in the present case. *Anderson,* 42 Fed.Cl. at 883.

The applicants base their argument on adversity of interest. They assert their position differs from defendant's because they oppose granting any rights to access or develop the mining claims. They also contend defendant's representation is inadequate because it must advocate the interests of the general public.

The fact that defendant must also support the public's interest does not mean it will inadequately represent the applicants. The applicants and defendant seek the same ultimate objective in this suit—a ruling that plaintiff is not entitled to just compensation because it has no valid mining claims. Although the applicants' goal is to prevent all mining, this does not suffice to rebut the presumption of adequate representation. *Hage,* 35 Fed.Cl. at 742 (stating that although the applicants have different goals than the government, they have presented no evidence that their ultimate objectives are different). Since they have not cited a statute granting them a right to intervene, and because they cannot establish the elements of RCFC 24(a)(2), the applicants are not entitled to intervention of right.

## II. Permissive Intervention

■ The applicants assert, in the alternative, that they are allowed to join under permissive intervention. RCFC 24(b) provides the applicable standard:

> Upon timely application anyone *may* be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

RCFC 24(b) (emphasis added); *see also EEOC v. Nat'l Children's Center, Inc.,* 146 F.3d 1042, 1046 (D.C.Cir.1998) (stating that permissive intervention is an inherently discretionary enterprise). The court has concluded that the applicants' motion is timely and that they have not cited a statute conferring them a right to intervene. The focal point of this analysis, therefore, is RCFC 24(b)(2).

The applicants have failed to prove a claim or defense in common with the parties of this case. They believe that if plaintiff is successful on the merits, the Forest Service must issue a mining patent, which will automatically exclude them from the land at issue. As discussed above, this argument is misstated. The only issue in this case is whether plaintiff is entitled to just compensation. The applicants have not shown why they have an interest in this determination. Although the validity of plaintiff's mining rights is an issue in this litigation, the court has no authority to order defendant to grant a patent to plaintiff. Moreover, if plaintiff eventually receives said patent, it will not automatically exclude the applicants from the desired land. It would be plaintiff's choice to allow them access. The court has no jurisdiction over this issue between private parties. *See Northern Pipeline,* 458 U.S. at 67, 102 S.Ct. 2858.

Moreover, the court must consider whether an intervenor would burden or prolong the proceedings by filing a counterclaim or motions on extraneous issues. *See Solid Waste Agency of N. Cook County v. United States Army Corps of Eng'rs,* 101 F.3d 503, 507 (7th

Cir.1996). The court concludes that granting permissive intervention in this case would unduly delay the proceedings. Both the government and the applicants are attempting to prove that plaintiff does not have a valid mining claim. The duplicative nature of the evidence will not shed any additional light on this issue. The ultimate objectives of the applicants and defendant are the same, and there is a presumption that the government adequately represents the applicants' interests. Allowing the applicants to intervene in this case would threaten expedient disposition of the action. The court, therefore, deems permissive intervention inappropriate.[4]

### III. *Amicus Curiae*

Since the applicants have failed to satisfy the requirements of RCFC 24, the court denies their motion to intervene. Per its discretion, the court will grant the applicants *amicus curiae* status. As friends of the court, the applicants will be permitted to file responses to the parties' dispositive motions and briefs if this case proceeds to trial. The applicants may also avail themselves of the opportunity to attend public court proceedings. If necessary, the court will call on the applicants to provide an additional perspective. *Hage*, 35 Fed.Cl. at 742. If both parties agree, the applicants can be present at depositions or other discovery proceedings. They must obtain the court's prior consent, however, before participating in all other actions.

### Conclusion

For the above-stated reasons, the Project's and MPC's motion to intervene is hereby DENIED. The Project and MPC, however, are GRANTED *amicus curiae* status under the terms and conditions set forth above.[5]

IT IS SO ORDERED.

---

4. The court's conclusion that the applicants cannot intervene in this case makes it unnecessary to address plaintiff's additional argument that the applicants do not have standing.

5. The parties are reminded of the court's June 14, 2001 order requiring them to submit a Joint Preliminary Status Report within 30 days of the court's ruling on this motion to intervene. The Project and MPC are not to participate in this report.