# United States Court of Appeals
## For the Eighth Circuit

_____

Nos. 13-3394/14-3195

_____

United States of America

*Plaintiff - Appellee*

State of Missouri

*Intervenor Plaintiff - Appellee*

v.

Robert Geranis; Leroy Harris; Mike Doak; Gerald Duvall

*Intervenor Defendants - Appellants*

Benton County Sewer District No. 1 of Benton County, Missouri; William Seek, solely in his capacity as President an Trustee of Benton County Sewer District No. 1, also known as Ted Seek; John Grate, solely in his capacity as Trustee of Benton County Sewer District No. 1; Joseph Gualco, solely in his capacity as Trustee of Benton County Sewer District No. 1; Stephen Tibbetts, solely in his capacity as Trustee of Benton County Sewer District No. 1

*Defendants - Appellees*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 23, 2015
Filed: December 15, 2015

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

In 2013, voters of Benton County Sewer District No. 1 ("District") voted to dissolve the District, as permitted under Missouri law. The day before the election, the United States filed the present lawsuit on behalf of the U.S. Department of Agriculture ("USDA") to enjoin dissolution of the District. A Voter Representative Group ("Group"), which consists of four individuals who are all District voters, customers, ratepayers, and property owners, seeks to intervene in the lawsuit. The district court[1] denied the Group's motion to intervene, and the Group appealed. While the appeal was pending before this Court, the existing parties sought court approval for an asset purchase agreement to sell the District's assets (primarily the physical infrastructure of the sewer system) to a private entity and finally dissolve the District. The Group renewed its motion to intervene. The district court[2] denied the motion again, citing the Group's lack of standing. The Group appeals the district court's denial of both motions. We affirm.

## I. Background

The District was created in 1994 in accordance with Missouri law. See Mo. Rev. Stat. § 204.250 (providing for the establishment of common sewer districts). In the years that followed, the District's Board of Trustees ("Trustees") obtained funding to construct and operate a sewer system through state and federal grants and by

_____

[1] The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

[2] The Honorable Beth Phillips, United States District Judge for the Western District of Missouri.

issuing a revenue bond to the USDA secured by a lien against the physical infrastructure of the system. Ultimately, the District constructed a common sewer system that remains in operation today, serving approximately 365 customers.

On October 3, 2012, the Benton County Circuit Court entered a consent judgment requiring the District to undertake extensive upgrades and repairs in order to comply with the Missouri Clean Water Law. Missouri v. Benton Cnty. Sewer Dist. No. 1, No. 12BE-CC00052 (30th Cir. Ct. Oct. 3, 2012). In response, voters in the District circulated a petition to place on the ballot the question: "Shall the Benton County Sewer District #1 of Benton County, Missouri be dissolved?" In the April 2, 2013 General Municipal Election, the question of dissolving the District appeared on the ballot and a majority of District voters voted "Yes." In the same election, a majority of District voters voted against a proposed plan to levy property taxes to help finance the operation of the District. No issue was presented on the ballot concerning the fate of the physical infrastructure of the common sewer system operated by the District.

On the day before the election, the United States filed the present lawsuit against the District and the Trustees, seeking declaratory judgment and injunctive relief on behalf of the USDA. The United States also sought a temporary restraining order to preserve the District's status quo in the event of a vote to dissolve the District. The district court granted the temporary restraining order upon finding that: (1) dissolution of the District would leave USDA without an adequate remedy for recovering the revenue bond; and (2) discontinued use of the sewer system would pose a threat to public health and welfare.

On April 19, 2013, the United States filed an application for a preliminary injunction, seeking an order that the District and the Trustees would not initiate the process of dissolution. The District filed a response neither supporting nor opposing the preliminary injunction. Rather, the District expressed a desire to resolve the

matter in a way that would be fair to the District's customers and voters, as well as to the USDA. On May 1, 2013, the district court granted the preliminary injunction.

On May 23, 2013, the Group filed a pro se motion to intervene as a defendant. One of the individuals, Gerald Duvall, was an existing party to the lawsuit in his official capacity as a Trustee. All of the Group members voted to dissolve the District. In its motion, the Group argues that the District and the Trustees are not proper defendants because their authority was terminated by the April 2, 2013 election.

The State of Missouri intervened as a plaintiff on June 14, 2013. The State's motion opposed immediate dissolution of the District on the grounds that it would result in noncompliance with the Missouri Clean Water Law. The State indicated that it would not oppose orderly dissolution guided by the court to ensure compliance with state law. The district court granted the State's motion to intervene.

On July 12, 2013, the Group secured counsel. In an amended motion to intervene, the Group claimed an interest in: (1) upholding the vote to dissolve the District, (2) dissolving the District, (3) opposing repayment of the bond to the USDA, (4) opposing the State's claims under the Missouri Clean Water Law, and (5) proposing on-site sewage treatment alternatives. No existing party filed an opposition to the Group's motion. On October 3, 2013, the district court denied the Group's motion to intervene on the grounds that it did not meet the requirements of Federal Rule of Civil Procedure 24(a). The Group appealed this decision on October 30, 2013.

In the months that followed, efforts to resolve the fate of the sewer system continued. On April 24, 2014, while the Group's appeal was still pending, the United States and the State filed a joint motion for approval of the asset purchase agreement. The proposed agreement provided for sale of the District's assets to Missouri-American, an experienced private owner and operator of sewer systems in Missouri.

Under the agreement, Missouri-American would pay $750,000 directly to the USDA as partial payment of the outstanding balance the District owes for the revenue bonds. The District's other debts owed to the USDA would be discharged. Following the sale, the District would be dissolved. The District and the Trustees filed a response indicating they neither support nor oppose the proposed sale.

In response to the proposed asset purchase agreement, the Group renewed its motion to intervene to oppose the joint motion for approval of the agreement. The United States and the State filed joint suggestions in opposition to the Group's renewed motion to intervene, arguing the Group lacks standing and cannot meet the requirements to intervene as of right. On July 17, 2014, the district court scheduled a hearing for July 30, 2014, during which the parties were permitted to present witnesses. The Group did not present any evidence pertaining to intervention. On August 11, 2014, the Group filed additional suggestions in opposition to the proposed asset purchase agreement and in support of its renewed motion to intervene.

On August 25, 2014, the district court approved the asset purchase agreement and set in motion the sale of the District's sewer system to Missouri-American.[3] The district court also denied the Group's renewed motion to intervene on the same basis as the earlier denial, as well as lack of Article III standing. The denial of a motion to intervene of right is immediately appealable as a final judgment. Our review is de novo.

---

[3] The Missouri Public Service Commission granted Missouri-American's application for a Certificate of Convenience and Necessity on November 12, 2015, effective December 12, 2015. (Case No. SA-2015-0065). The sale is scheduled to close on December 18, 2015. Upon closing, Missouri-American will immediately take over and operate the sewer system

## II. Discussion

As our precedent indicates, "Article III standing is a prerequisite for intervention in a federal lawsuit." Standard Heating & Air Conditioning Co. v. City of Minneapolis, 137 F.3d 567, 570 (8th Cir. 1998). To demonstrate standing, a proposed intervenor must show: (1) injury, (2) causation, and (3) redressability. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). In particular, the injury must be "concrete, particularized, and either actual or imminent." Curry v. Regents of the Univ. of Minn., 167 F.3d 420, 422 (8th Cir. 1999). The alleged injury must also be "fairly traceable to the defendant's conduct" and capable of being remedied by a favorable decision. United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 834 (8th Cir. 2009).

In the district court, the Group expressed concern that the existing parties were not considering its interests as to four major issues. In order to proceed, the Group must show that it has standing on at least one of its asserted interests. As discussed below, we conclude the Group has failed on each ground.

First, the Group claims an interest in upholding the vote to dissolve the District and immediately dissolving the District. These interests are shared by all the voters who voted to dissolve the District. Thus, on this ground, the Group "fail[s] to allege a specific individualized injury necessary to establish standing in federal court." Nolles v. State Comm. for Reorg. of Sch. Dists., 524 F.3d 892, 900 (8th Cir. 2008) (finding a group of Nebraska voters did not have standing to challenge the application of the state constitution to a state referendum process). Further, the existing parties have not ignored or attempted to undermine the vote in support of dissolution. Rather, they seek to effectuate the District's dissolution in accordance with Missouri law, which requires "no district shall be dissolved until all of its outstanding indebtedness has been paid." Mo. Rev. Stat. § 67.950(9). The Group's interest varies only insofar as it seeks an *unlawful* immediate dissolution.

Second, the Group claims an interest in opposing the repayment of the revenue bond the District issued to the USDA. Missouri law requires that the revenue bond "shall be payable solely from the revenues derived and to be derived from the operation of the sewerage system acquired, constructed, improved or extended in whole or in part from the proceeds of the bonds." Mo. Rev. Stat. § 204.390. As ratepayers, the Group may be properly situated to assert economic interests in avoiding increased rates. See Metro. St. Louis Sewer Dist., 569 F.3d at 835 (noting an association of businesses "is properly situated to assert the utility related economic interests of its members"). However, the Group does not show how any such injury is actual or imminent. Through this lawsuit, the parties have arranged a solution for repaying the USDA that will lower rates. In other words, the Group's alleged injury would arise only if: (1) Missouri-American and the District receiver failed to close on the sale of the District's sewer system, (2) the USDA continued to demand payment on the revenue bond, and (3) the District raised rates to pay the bond obligation. Further, even if we rule in the Group's favor, its interests in opposing repayment are at odds with the Bond Agreement as well as Missouri state law, which require repayment of the bond. Because the parties do not challenge the law itself, we cannot find standing where the asserted theory of redressing the injury is clearly contrary to the applicable law.

Third, the Group claims an interest in opposing the State's claims under the Missouri Clean Water Law. Missouri law requires sewer districts to abide by a number of environmental and administrative regulations. The Group has failed to established how the enforcement of these laws amounts to a "personal and individual" injury. Hollingsworth v. Perry, 133 S. Ct. 2652, 2662 (2013) (quoting Defs. of Wildlife, 504 U.S. at 560 n.1). Rather, the Group asserts only a "generalized grievance," which is available to all of the members of the District. In other words, the Group's claim of "harm to his and every citizen's interest in proper application of the . . . laws, and seeking relief that no more directly and tangibly benefits him than

-7-

it does the public at large" cannot provide the basis for standing.  Id. (quoting Defs. of Wildlife, 504 U.S. at 573–74).

Finally, the Group claims an interest in proposing on-site sewage treatment alternatives.  The record indicates residents of the District will be permitted to apply to unhook from the central sewer system due to the sale of the District's sewer system to Missouri-American.  However, because a state agency must grant permission to residents seeking to install on-site systems and because the geological conditions in the District are unfavorable to such systems, it is unlikely that many residents will be able to unhook from the central sewer system.  Any injury the Group could suffer with regard to the ability to construct on-site systems is not "personal and individual" to the Group, and it is not caused by the dissolution of the District.  Moreover, the sale of the sewer system to Missouri-American results in the immediate dissolution of the District, yet there is no way to guarantee that the Group's members could construct on-site systems.  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998).

## III. Conclusion

Based on the foregoing, we conclude the Group does not have Article III standing.  Because this is a prerequisite for intervention in this Circuit, we need not address intervention separately.  The judgment of the district court is affirmed.

_____