**FIFTH THIRD BANK OF WESTERN OHIO, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

No. 95–503C.

United States Court of Federal Claims.

March 29, 2002.

Alan M. Grimaldi, Washington, DC, for plaintiff. Robert M. Bruskin, Timothy K. Armstrong, Alexander B. Berger, and Grace Graham, Howrey Simon Arnold & White, LLP, of counsel. Heather L. Thurston, Fifth Third Bank of Western Ohio, Dayton, OH, of counsel.

David A. Levitt and Brian A. Mizoguchi, Jr., Washington, DC, with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant. William L. Small, FDIC, of counsel.

Konrad Kircher, Cincinnati, OH, for Richard J. Miller, intervenor.

## ORDER

MILLER, Judge.

This case is before the court on the Motion of Richard J. Miller To Intervene as a Party Plaintiff and presents the issue whether a former bank employee can intervene as a third-party beneficiary in a *Winstar* case. *See United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). Argument is deemed unnecessary.

## FACTS

Fifth Third Bank of Western Ohio ("plaintiff") seeks money damages from the United States for breach of contract and for a taking of its property without just compensation in violation of the Fifth Amendment of the Constitution. The case involves six transactions between plaintiff's predecessor in interest and the Government under which plaintiff claims contractual and proprietary rights to the use of certain regulatory accounting methods. Richard J. Miller, who seeks to intervene, accepts as true each allegation of plaintiff's complaint. Mr. Miller further alleges that, during all times relevant to this action, he was employed by plaintiff as Senior Vice President and Senior Lending Officer; that as a result of the Government's actions, he was terminated on July 13, 1990; and that the timing of, and circumstances surrounding, his termination have damaged his reputation, employability, and financial position.

Mr. Miller asserts three theories of recovery in this case: (1) that he is a third-party beneficiary to any contract between plaintiff and the Government; (2) that the Government's conduct constitutes an unconstitutional taking of his property; and (3) that he is equitably subrogated to the claims of plaintiff.

The court received this case by assignment on February 1, 2002, which revived all pending motions. The history of the instant motion is mystifying. It was filed over five years ago on March 13, 1995. Defendant unearthed it during a review after various stays had expired and, by motion dated November 2, 2001, obtained leave to file an opposition, which is dated February 4, 2002.

## DISCUSSION

RCFC 24 is almost identical to FED. R. CIV. P. 24, and the construction given to the federal rule informs the court's analysis. *See* RCFC 1(b); *Amer. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1560 & n. 4 (Fed.Cir.1989). The requirements for intervention are construed in favor of intervention. *Amer. Mar.*, 870 F.2d at 1561.

RCFC 24 provides two bases for intervention: intervention of right under RCFC 24(a), and permissive intervention under RCFC 24(b). If the movant satisfies the elements of RCFC 24(a), the court is without discretion, and the movant "shall be permitted to intervene." Under RCFC 24(a)(2), the court must allow Mr. Miller to intervene if (1) he claims an interest relating to the property or transaction that is the subject of the action, and (2) he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless (3) his interest is adequately represented by existing parties.[1]

---

1. No objection has been raised regarding the timeliness of Mr. Miller's motion. Mr. Miller has

If intervention of right is not available, the court may, in its discretion, allow intervention under RCFC 24(b)(2), where the movant's "claim or defense and the main action have a" question of law or fact in common." "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." RCFC 24(b).

Mr. Miller's motion makes no distinction between the procedures for intervention by right and permissive intervention, nor does he tailor his argument to any case decided by the Federal Circuit regarding RCFC 24. For its part, defendant's opposition is essentially a facial challenge to Mr. Miller's claims and contains little discussion of the standards for intervention. While the court appreciates the resources that defendant has been required to commit to the parties' motions for summary judgment, the court renders its decision without an effective opposition, addressing each of Mr. Miller's claims individually, first under the requirements for intervention of right and second under the balancing test described for permissive intervention.

### 1. Third-party beneficiary claim

■ Mr. Miller first alleges that he is a third-party beneficiary to any contract between plaintiff and the Government. Under the first requirement of RCFC 24(a)(2), Mr. Miller must claim an interest relating to the property or transaction that is the subject of the action. Federal Circuit precedent instructs that intervention of right is proper only to protect those interests that are " 'of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment.' " *Amer.Mar.*, 870 F.2d at 1561 (quoting *Smith v. Gale*, 144 U.S. 509, 518, 12 S.Ct. 674, 36 L.Ed. 521 (1892)). The asserted interest therefore must be direct, immediate, and legally protectable. *Amer.Mar.*, 870 F.2d at 1561.

Defendant offers no argument as to whether third-party beneficiary status is the sort of direct or immediate interest protected by

RCFC 24(a)(2). The court is mindful that "[t]he effort to extract substance from the conclusory phrase 'interest' or 'legally protectable interest' is of limited promise." *Smuck v. Hobson*, 408 F.2d 175, 178–79 (D.C.Cir.1969). This observation does not compensate for defendant's failure to make any legal argument regarding treatment of third-party beneficiaries under RCFC 24. As a purported third-party beneficiary, Mr. Miller argues that the parties entered into the alleged contract with the particular purpose to directly benefit him. He therefore claims a direct interest in the contract between plaintiff and the Government and thus satisfies the first element of intervention of right.

Defendant mounts what is essentially a facial challenge to the legal sufficiency of Mr. Miller's third-party beneficiary claim. As the court must determine whether the asserted interest is legally protectable, such a challenge is proper, albeit incomplete. *Cf. New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463–64, 466–70 (5th Cir.1984) (determining sufficiency of asserted third-party beneficiary status under Rule 24(a)(2) by reference to facial validity of movant's claim under substantive law), *cited in Amer. Mar.*, 870 F.2d at 1561. The Tucker Act, 28 U.S.C. § 1491(a)(1) (1994 & Supp. V 1999), confers the Court of Federal Claims with jurisdiction over any claim against the United States founded upon an express or implied contract and includes claims by third-party beneficiaries. *Glass v. United States*, 258 F.3d 1349, 1354 (Fed.Cir.2001). A party is a third-party beneficiary of a contract with the Government if that contract "reflects the express or implied intention . . . to benefit the party directly." *Id.; Schuerman v. United States*, 30 Fed.Cl. 420, 433 (1994). The intended beneficiary need not be identified specifically or individually in the contract, *State of Mont. v. United States*, 124 F.3d 1269, 1273 (Fed.Cir.1997), but must fall within a class clearly intended to be directly benefitted thereby. *Glass*, 258 F.3d at 1354 (distinguishing between direct and incidental beneficiaries).

not identified an unconditional statutory right to intervene that would bring him within RCFC

24(a)(1), nor does he identify a conditional statutory right of the sort described in RCFC 24(b)(1).

Mr. Miller argues that the contracts with the Government permitted plaintiff to "utilize a greater amount of capital for lending" and that plaintiff entered into the contracts "with the specific intent of expanding its lending operations, of which Miller was in charge." Miller's Br. filed Nov. 13, 1995, at 3–4, 5. Mr. Miller makes no specific allegation or argument that the Government intended directly to benefit anyone at plaintiff's lending department, let alone Mr. Miller. Nevertheless, Mr. Miller generally alleges that he is a third-party beneficiary, and the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Accordingly, were this a motion to dismiss pursuant to RCFC 12(b)(4), plaintiff would be "entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The next questions are whether Mr. Miller is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest as a third-party beneficiary and whether his interest is adequately represented by existing parties. Defendant offers no argument on these points. The impact of *stare decisis* has been held to impose the "practical impairment" required by RCFC 24(a). *See Freeman v. United States,* 50 Fed.Cl. 305, 309 (2001); *Anderson Columbia Envtl., Inc. v. United States,* 42 Fed.Cl. 880, 882 (1999). *See generally Atlantis Dev. Corp. v. United States,* 379 F.2d 818, 828–29 (5th Cir.1967) (court "must itself take the intellectually straight forward, realistic view that the first decision will in all likelihood be the second and the third and the last one"). Although not bound by *res judicata,* Mr. Miller's claim turns on the legal conclusion that on likely identical facts a contract exists between plaintiff and the Government. A decision that no such contract exists in this case thus will substantially impair Mr. Miller's interest as a third-party beneficiary.

RCFC 24(a)(2) provides that intervention of right will be denied where the movant's interest is adequately represented by existing parties, but a movant need only show that the representation of his interests "may be" inadequate. *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). *See generally Blake v. Pallan,* 554 F.2d 947, 954–55 (9th Cir.1977) (discussing factors that influence adequacy of representation). Moreover, RCFC 24(a)(2) requires intervention unless an existing party adequately represents the movant's "interest," not simply defend that interest from impairment in the instant litigation. Again, defendant offered no argument on this point.

A party can be expected to tailor arguments to its own interest, such that any significant divergence of those interests usually indicates that the party will not provide adequate representation of the movant's interest. The legal requirements for third-party beneficiary status are separate from the elements of a contract with the Government, thereby creating such a divergence. While plaintiff adequately will litigate the existence of a contract with the Government, it does not share the ultimate objective of Mr. Miller, which is to establish the existence of a third-party beneficiary to that contract. Plaintiff has not responded to the motion to intervene, and the court has no basis to perceive a willingness by plaintiff to represent Mr. Miller's interest as a third-party beneficiary.

The court acknowledges that plaintiff's claim to third-party beneficiary status may be deemed meritless.[2] Rule 24(a)(2), however, requires that any such determination be made in this action, rather than in a separate case. The court is confident that all information regarding the Government's intent has been produced, and summary judgment will be available to defendant if Mr. Miller cannot

---

2. Defendant's opposition paints the parade of horribles that would attend Mr. Miller's eleventh-hour entry into this case. Unlike RCFC 24(b), RCFC 24(a) is not concerned with prejudice to the parties. However, any prejudice to defendant or the progress of this case filed in 1995 may be alleviated by a dispositive motion challenging Mr. Miller's claim to third-party beneficiary status.

marshal sufficient evidence upon which the court reasonably can find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, the court can and will enforce the duty imposed on attorneys by RCFC 11 "to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (quoting FED. R. CIV. P. 11). Mr. Miller's motion to intervene is therefore granted under RCFC 24(a) with respect to his third-party beneficiary claim.

### 2. *Takings claim*

■ Mr. Miller alleges that the conduct of the Government constitutes "an unconstitutional taking of his own property." Miller's Br. filed Nov. 13, 1995, at 6. According to Mr. Miller, the enactment of FIRREA "caused great financial harm" to plaintiff, restricting its business opportunities, particularly its lending operations, and ultimately resulting in Mr. Miller's termination. Miller's Br. filed Nov. 13, 1995, at 4. Mr. Miller argues that he was terminated "as a direct result of FIRREA's unlawful impact" and that he was unable to obtain acceptable employment in the banking industry because the public confidence in plaintiff "had been decimated," thereby stigmatizing its former employees. *Id.*

3. At one point Mr. Miller argues that the Government's conduct amounts to an "unconstitutional taking," while at another point Mr. Miller argues that he was deprived of his property without due process of law. The Takings Clause of the Fifth Amendment is a money-mandating provision of the Constitution for purposes of the Tucker Act, *Preseault v. ICC*, 494 U.S. 1, 11–12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990), but the Due Process Clause of that amendment, which provides that no person shall be deprived of property without due process of law, does not require the payment of money damages so as to permit jurisdiction in the Court of Federal Claims. *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987).

4. The Federal Circuit has recently commented on the interplay between takings claims and contractual claims:

Whether Mr. Miller's interest is legally protected is questionable, at best.[3] That it does not relate to the "property or transaction that is the subject of the action" is apparent. The subject of this action is plaintiff's right to the use of certain accounting methods, the use of goodwill to satisfy regulatory capital standards, and the amortization of that goodwill. Plaintiff alleges that the Government deprived plaintiff of these rights in violation of a contractual agreement and in violation of the Takings Clause.[4] Rather than alleging any interest in these rights, Mr. Miller alleges that the same Government actions also constitute a taking of his employment and reputation. This is not the "interest" protected by intervention of right under RCFC 24(a)(2), but is the sort of common question of law or fact for which intervention may be granted permissively under RCFC 24(b).

■ The court, however, declines to grant intervention under RCFC 24(b). Although Mr. Miller's takings claim may involve factual questions regarding government conduct implicated by plaintiff's complaint, it also presents entirely different legal questions and factual disputes as to Mr. Miller's property interest. The court considers that litigation of these issues would alter drastically the scope of plaintiff's lawsuit and unjustifiably delay adjudication of plaintiff's claims.

Mr. Miller's motion to intervene therefore is denied under both RCFC 24(a) and (b) with respect to his takings claim.

> Taking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity. Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights.

*Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed.Cir.2001); *see also Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978) ("[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.").

### 3. Equitable subrogation claim

Mr. Miller asserts a third claim founded upon the "doctrine of equitable or legal subrogation." Miller's Br. filed Nov. 13, 1995, at 7. As a threshold matter, the Court of Federal Claims has no general equitable power to do substantial justice. The Tucker Act waives sovereign immunity only for money damages arising out of a contractual relationship, constitutional provision, statute, or regulation. *Khan v. United States*, 201 F.3d 1375, 1377 (Fed.Cir.2000).

It is well settled, however, that the doctrine of equitable conversion permits a contractor's surety to recover from the United States payments made to a contractor after the surety had notified the Government of the contractor's default. The surety then can avail itself of the waiver of sovereign immunity in the Tucker Act in order to maintain its action in the Court of Federal Claims. *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1373–75 (Fed.Cir.2001) (treating equitable subrogation as assignment by operation of law). Two circumstances occur whereby a surety may succeed to the contractual rights of a contractor against the Government: when the surety takes over contract performance or when it finances completion of the defaulted contract. *Id.* at 1370.

Mr. Miller makes no attempt to fit his case within these parameters. According to Mr. Miller, "[t]he doctrine of subrogation as now applied is broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter." Miller's Br. filed Nov. 13, 1995, at 7. Purporting to apply this rule to the facts of his complaint, Mr. Miller states:

> Although this is not the typical subrogation case, in which the intervenor has paid to a plaintiff sums which should have been paid by a defendant, the same principle should apply. Plaintiff involuntarily and out of necessity as a result of Defendant's conduct, took from Miller his employment. Plaintiff also suffered other consequences from Defendant's actions and has initiated this lawsuit. Under the principle of equi- table or legal subrogation, Miller should be permitted to obtain restitution for his loss by subrogating to the rights of the party which involuntarily and out of necessity took his employment from him, so that he may be compensated by the real party at fault.

*Id.* at 7–8. Mr. Miller identifies no suretyship, no assignment of a contractual right against the Government, nor any obligation that he has satisfied that existed between plaintiff and the Government. Instead, the logic behind Mr. Miller's equitable subrogation claim—that Mr. Miller has a cause of action against the Government because the Government coerced plaintiff into terminating Mr. Miller—is redolent of tortious interference, and it is established law that the Court of Federal Claims has no power to adjudicate torts. 28 U.S.C. § 1491(a)(1); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed.Cir.1993). Whatever basis in the doctrine equitable subrogation intervenor's claim may have, it steers far wide of any right that is legally protectable in the Court of Federal Claims.

The court is not disposed to allow plaintiff to intervene with this claim under RCFC 24(b). Beyond presenting different factual and legal issues, Mr. Miller's equitable subrogation claim is so obviously beyond the court's jurisdiction that further litigation would needlessly delay adjudication of plaintiff's claims.

Mr. Miller's motion to intervene is therefore denied under both RCFC 24(a) and (b) with respect to his equitable subrogation claim.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Mr. Miller's motion to intervene is granted under RCFC 24(a) with respect to his third-party beneficiary claim, and the Clerk of the Court shall file his Intervening Complaint, the filing date to be effective as of the date of the complaint. Intervenor's right to brief the pending summary judgment motions is foreclosed, as the court deems briefing to be complete.

2. Mr. Miller's motion to intervene is denied under both RCFC 24(a) and (b) with respect to his takings claim and his equitable subrogation claim.