**JOHN R. SAND & GRAVEL COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 02–509L.**

United States Court of Federal Claims.

Feb. 2, 2004.

---

Jeffrey K. Haynes, Bloomfield Hills, MI, with whom was L. Rider Brice, III, Bloomfield Hills, MI, for plaintiff.

John S. Most, with whom was Thomas L. Sansonetti, Assistant Attorney General,

United States Department of Justice, Washington, DC, for defendant. Peter Felitti, Associate Regional Counsel, United States Environmental Protection Agency, Chicago, IL, of counsel.

Robert K. Huffman, Washington, DC, for intervenor-applicants. Robert M. Jackson, Steven C. Nadeau and Christy H. Dral, Detroit, MI, and Lisanne E.S. Cottington and Jeffrey C. Walker, Washington, DC, of counsel.

## OPINION

HEWITT, Judge.

The court has before it The Metamora Group's Motion to Intervene. The members of the Metamora Group (intervenor-applicants) seek to intervene as party defendants. Memorandum in Support of the Metamora Group's Motion to Intervene (Metamora Mem.) at 14. For the following reasons, The Metamora Group's Motion to Intervene is DENIED.

## I.  Background[1]

In this case plaintiff John R. Sand & Gravel Company seeks compensation for defendant's physical taking of plaintiff's property during the environmental remediation of the Metamora Landfill in Lapeer County, Michigan. Complaint (Compl.) ¶¶ 1, 2, 50–64. Plaintiff is a long-term lessee of property which includes the Metamora Landfill. *Id.* ¶¶ 5, 7, 13. Plaintiff mines sand and gravel on the property. *Id.* ¶ 9–10. The "Metamora Group" is a group of companies which, with one exception, comprise a sub-group of the companies that entered into a court-

1.  The facts presented are only those relevant to the court's decision on the intervenor-applicants' motion to intervene. For additional background information, see *John R. Sand & Gravel Co. v. United States*, 57 Fed.Cl. 182, 183–85 (2003).

2.  The following groups are identified as members of the Metamora Group: Ford Motor Company; General Motors Corporation; DaimlerChrysler Corporation; Brunswick Corporation; Seibert-Oxidermo, Inc. n/k/a S.O. Realty, Inc.; United Technologies Corporation for Inmont Corporation n/k/a BASF Corporation; Reichhold, Inc.; Foamseal, Inc.; Mercury Paint Company; Lapeer Metal Products Company; Johnson Controls, Inc./Universal Die Cast; and The Glidden Company d/b/a ICI Paints. Metamora Mem. at 1

approved consent decree (Consent Decree) with the United States Environmental Protection Agency (EPA) on March 17, 1993 (Settling Defendants).[2] *See United States v. BASF–INMONT Corp.*, 819 F.Supp. 601, 601, 611, 615 (E.D.Mich.1993) (approving Consent Decree). Under the Consent Decree the Settling Defendants were required to undertake and to pay for certain remedial measures to clean up the Metamora Landfill site. *Id.* at 604–05. Plaintiff was not a party to the Consent Decree, Compl. ¶ 25; *see also BASF–INMONT Corp.*, 819 F.Supp. at 601 (listing the parties to the Consent Decree in the case caption), and was not named as a potentially responsible party in connection with the contamination, *see* Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact Dated May 13, 2003 ¶ 34 (agreeing with plaintiff that plaintiff "has never been named a potentially responsible party in relation to liability for contamination at the Metamora Landfill").

In 1996, plaintiff denied Settling Defendants access to the Metamora Landfill site. Compl. Ex. 2 at 6 (containing a copy of Administrative Order Directing Compliance with Request for Access in *In re Metamora Landfill Site*, No. 97–C–379 (EPA Dec. 18, 1996)). The EPA issued an Administrative Order Directing Compliance with Request for Access (Administrative Order), which ordered John R. Sand & Gravel Company to "grant to U.S. EPA and U.S. EPA's agents, contractors, subcontractors, consultants and representatives entry and access to all portions of the [Metamora Landfill] Site." *Id.* at 7. The Administrative Order was necessary because, "to comply with the terms of the

n. 1. In a subsequent filing, The Sherwin-Williams Company is included as a member of the Metamora Group and Foamseal, Inc. is not. The Members of the Metamora Group's Response to the Court's December 2, 2003 Order at 1–2. "[T]he Metamora Group is not a separate legal entity [distinct from the individual members who make it up]," so if the court were to grant the motion to intervene, "each individual member of the Metamora Group would intervene in its own name." *Id.* at 1. Seibert–Oxidermo, Inc. n/k/a S.O. Realty, Inc. was not a signatory to the 1993 Consent Decree, but signed a 1996 Cost Recovery Consent Decree and participates in the Metamora Group. *Id.* at 2.

Consent Decree, Settling Defendants need[ed] access to the [Metamora Landfill] Site." *Id.* at 5. When disputes arose regarding plaintiff's compliance with the EPA's Administrative Order, defendant filed a complaint in the District Court for the Eastern District of Michigan. Compl. ¶¶ 40–41. The court enjoined plaintiff "from interfering in any way with the right of EPA, its contractors and representatives ... from entering on or at the Metamora Landfill Site." *Id.* Ex. 4 at 1 (containing *United States v. John R. Sand & Gravel Co.,* No. 97–75497 (E.D.Mich. Mar. 23, 1998) (order granting preliminary injunction)). Further, "[t]he Court acknowledge[d] that the Metamora Landfill Settling PRP Group ha[d] been designated as an EPA representative for purposes of implementation of EPA's selected remedies." *Id.* Ex. 4 at 1–2. It is the actions carried out by defendant, "its agents, and their subcontractors, consultants, or representatives ... in order to implement the remedy at the Metamora Landfill" which plaintiff alleges caused the taking of plaintiff's property. *Id.* ¶¶ 51, 56.

The members of the Metamora Group assert that they are entitled to intervention of right and, in the alternative, that they meet the test for allowing permissive intervention. Metamora Mem. at 4. Plaintiff opposes the Metamora Group's motion to intervene. *See* Plaintiff John R. Sand & Gravel Company's Response to the Metamora Group's Motion to Intervene (Pl.'s Resp.) at 7, 35 ("The Metamora Group fails to demonstrate that it meets any of the criteria for intervention of right or any of the criteria for permissive intervention.").

II. Discussion

A. Legal Framework

Intervention is governed by Rule 24 of the Rules of the United States Court of Federal Claims (RCFC). Intervention may be allowed either as a matter of right under Rule 24(a) or permissively under Rule 24(b). Although "the requirements for intervention are to be construed in favor of intervention," *Am. Mar. Transp., Inc. v. United States,* 870 F.2d 1559, 1561 (Fed.Cir.1989), courts routinely deny motions to intervene, *see, e.g., id.* at 1563 (affirming denial of motion to intervene because applicant "had not claimed an interest recognized under Rule 24(a)").

The rule governing intervention of right states:

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

RCFC 24(a). While it is true that "[i]f the movant satisfies the elements of RCFC 24(a), the court is without discretion, and the movant 'shall be permitted to intervene,'" *Fifth Third Bank v. United States,* 52 Fed.Cl. 202, 203 (2002) (quoting RCFC 24(a)), courts are nevertheless "entitled to the full range of reasonable discretion in determining whether the[ ] requirements [for intervention of right] have been met," *Rios v. Enter., Ass'n Steamfitters Local Union No. 638,* 520 F.2d 352, 355 (2d Cir.1975); *see also* 6 James Wm. Moore, *Moore's Federal Practice* § 24.03[5][a], at 24–51 (3d ed. 2002) ("Despite the label 'intervention of right,' courts exercise some discretion in weighing a motion to intervene under Rule 24(a)(2).").[3]

**3.** "RCFC 24 is almost identical to Fed.R.Civ.P. 24 ...." *Fifth Third Bank,* 52 Fed.Cl. at 203. Precedent under the Federal Rules of Civil Procedure is "persuasive" in interpreting RCFC 24. *Anderson Columbia Envtl., Inc. v. United States,* 42 Fed.Cl. 880, 881 (1999). While this court relies on cases interpreting Federal Rule of Civil Procedure 24 in its analysis, the court also notes that this court's intervention rules must be interpreted within the specific context of this court's jurisdiction. The court believes that the useful-

ness of persuasive authority under the Federal Rules of Civil Procedure supports the decision of this court to model its rules closely on the Federal Rules of Civil Procedure. In an introductory note to the revision of the RCFC adopted by this court effective May 1, 2002, the Rules Committee stated:

In this 2002 revision, the court has endeavored to create a set of rules that conforms to the Federal Rules of Civil Procedure as amend-

The rule governing permissive intervention states:

> Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

RCFC 24(b). The rule specifically vests the court with discretion in deciding whether to allow permissive intervention. "Trial courts possess 'broad discretion in resolving applications for permissive intervention.'" Moore, *supra*, § 24.10[1], at 24–55 (quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 106 (S.D.N.Y.1996)).

B. Timeliness

■ Under both Rule 24(a) and Rule 24(b), the application to intervene must be "timely." RCFC 24(a), (b). The court determines timeliness from all the circumstances and exercises "sound discretion" in making its determination. *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973); *see also Te–Moak Bands of W. Shoshone Indians v. United States*, 18 Cl.Ct. 82, 86 (1989) ("It is within the discretion of the court to decide which delays render motions untimely."); *Cheyenne–Arapaho Tribes of Indians v. United States*, 1 Cl.Ct. 293, 294 (1983) ("The question of timeliness is largely committed to the discretion of the trial court."). The court should examine three factors when determining whether a motion to intervene is timely:

"(1) the length of time during which the would-be intervenor[s] actually knew or reasonably should have known of [their] right[s] ...;

(2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor[s] by denying intervention;

(3) existence of unusual circumstances militating either for or against a determination that the application is timely."

*Belton Indus., Inc. v. United States*, 6 F.3d 756, 762 (Fed.Cir.1993) (quoting *Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 69 C.C.P.A. 75, 669 F.2d 703, 707 (C.C.P.A. 1982)).[4]

■ Intervenor-applicants argue that their motion to intervene is timely, Metamora Mem. at 6, while plaintiff argues that it is not, Pl.'s Resp. at 27. Neither intervenor-applicants nor plaintiff identify any "unusual circumstances." *See* Metamora Mem. at 9 n. 4 (stating that intervenor-applicants are "unaware of any facts which would support the 'existence of unusual circumstances'"); Pl.'s Resp. at 31 ("The Metamora Group's motion demonstrates no unusual circumstances why this Court should consider its motion timely."). Because the court cannot identify any unusual circumstances in this case, the court will examine only the first two factors-the length of time during which the would-be intervenors were on notice and the prejudice to would-be intervenors compared to the prejudice to the existing parties. As context for its examination, the court first provides the chronology of this case.

---

ed through November 30, 2001, to the extent practicable given differences in jurisdiction between the United States district courts and the United States Court of Federal Claims. Consistent with this objective, interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure. The court's own Rules Committee Notes are intended primarily to state the source of a given rule but in some instances also provide interpretive guidance.

RCFC rules committee's note.

4. In *Belton Industries*, the Federal Circuit reviewed a motion to intervene under United States Court of International Trade Rule 24(a).

6 F.3d at 762. The timeliness requirement for a motion to intervene under the Rules of the Court of International Trade and the Rules of the Court of Federal Claims is similar. *Compare* United States Court of International Trade Rule 24(a), (b) (stating that "timely application" is a requirement for both intervention of right and permissive intervention) *with* RCFC 24(a), (b) (same). The Court of Federal Claims has applied the three-factor timeliness test to cases before it. *See, e.g.*, *Standard Space Platforms Corp. v. United States*, 35 Fed.Cl. 463, 466 (1996) (citing *Belton Indus.*, 6 F.3d at 762); *Cheyenne–Arapaho Tribes of Indians*, 1 Cl.Ct. at 295 (citing *Sumitomo Metal Indus.*, 669 F.2d at 707).

Plaintiff filed its complaint on May 21, 2002. *See* Compl. at 1 (displaying a date stamp of May 21, 2002). The EPA sent the Metamora Group a letter notifying the Metamora Group of this action, enclosing a copy of plaintiff's complaint on July 16, 2002. *See* Notice of Filing at 1 (responding to the court's Order of December 11, 2003, requiring defendant to provide evidence of notice of this action given to the Metamora Group, by delivering a copy of the notice letter). The day before the EPA sent the letter and a copy of the complaint, "a technical person on the remedial staff of the Metamora Group received a call from an EPA technical person who gave them an informal notice that the lawsuit had been filed an[d] also said words to the effect that any judgment would be passed on to [the Metamora Group]." Transcript of Oral Argument held on Dec. 18, 2003(Tr.) at 11 (statement by intervenor-applicants). Defendant filed an answer on August 21, 2002. *See* Answer to Complaint at 1 (displaying a date stamp of Aug. 21, 2002). The parties filed their Joint Preliminary Status Report on October 10, 2002, in which the United States indicated that it intended to file a dispositive motion. *See* Joint Preliminary Status Report at 1, 2 (displaying a date stamp of Oct. 10, 2002 and stating that the United States "intends to file a motion pursuant to RCFC 12(b) and/or 12(c)"). On November 5, 2002, the court entered a scheduling order, which included a deadline of June 6, 2003 for the filing of dispositive motions. *See* Order of Nov. 5, 2002 at 1. On December 13, 2002, defendant filed a dispositive motion. *See* Defendant's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, and Memorandum in Support Thereof (displaying a date stamp of Dec. 13, 2002). The court denied defendant's motion on June 27, 2003, "except with respect to the monitoring wells not abandoned and still in operation," as to which it granted defendant's motion. *See John R. Sand & Gravel Co. v. United States,* 57 Fed.Cl. 182, 182, 193 (2003) (displaying a filing date for the decision of June 27, 2003). The case was stayed from August 29, 2003 to October 17, 2003 to allow for settlement negotiations. *See* Order of Sept. 5, 2003 (allowing a joint motion to stay proceedings). The settlement negotia-

tions were unsuccessful and the court officially lifted the stay in the case on October 22, 2003. *See* Order of Oct. 22, 2003 at 1 (lifting the stay). The Metamora Group filed its motion to intervene on November 7, 2003. *See* Motion to Intervene at 1 (displaying a date stamp of Nov. 7, 2003).

As to the length of time during which the intervenor-applicants were on notice, intervenor-applicants "knew or reasonably should have known," *Belton Indus.,* 6 F.3d at 762, of their right to intervene in this case on or about July 15, 2002, when the EPA informed the members of the Metamora Group of the existence of this case and stated that "any judgment would be passed on to [the members of the Metamora Group]," Tr. at 11 (statement by intervenor-applicants). The intervenor-applicants delayed approximately sixteen months, until November 7, 2003, in filing their motion to intervene. While the potential intervenors provide explanations for why they waited to file their motion to intervene, *see* Metamora Mem. at 6–7, the court finds their explanations to be unpersuasive and their delay to be unreasonable given the schedule of the case. Intervenor-applicants' primary argument for their delay in filing their motion to intervene is that had defendant prevailed on its dispositive motion or had the parties settled, there would have been no need to intervene. Metamora Mem. at 6–8. However, this case was not disposed of as a result of the court's ruling on defendant's dispositive motion on June 27, 2003 and settlement negotiations proved unsuccessful in October 2003. The court finds that intervenor-applicants should have considered these possibilities in light of the schedule the court entered, particularly the fact that the court scheduled a trial date for approximately sixteen months after it entered the first scheduling order. *See* Order of Nov. 5, 2002 at 2 (setting a trial date of March 23–31, 2004). By the time the court had ruled on defendant's dispositive motion, trial was only nine months away. When settlement negotiations failed, trial was approximately five months away. The court subsequently rescheduled the trial for May 18–28, 2004, Order of Dec. 12, 2003 at 2, giving the parties an additional two months to prepare, but this does not ameliorate the fact that intervenor-

applicants knew about the short time schedule of this case and failed to intervene within a reasonable time period. The unreasonableness of intervenor-applicants' delay is underscored by the prejudice to plaintiff resulting from intervenor-applicants' delay.

The court must weigh the prejudice to the parties if intervention is allowed against the prejudice to the potential intervenor if intervention is not allowed. *Belton Indus.*, 6 F.3d at 762. This prong measures only the prejudice caused by a potential intervenor's delay and not that caused by the intervention itself. *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1251 (10th Cir.2001). The parties in this case are prejudiced by the approximately sixteen months the intervenor-applicants delayed in filing their motion to intervene. In *Utah Association of Counties*, the court found that the parties were not prejudiced because the case was "far from ready for final disposition; no scheduling order ha[d] been issued, no trial date set, and no cut-off date for motions set." 255 F.3d at 1250–51. In contrast, this case is close to final disposition. A scheduling order was first entered on November 5, 2002, Order of Nov. 5, 2002, at 1; the deadline of June 6, 2003 for filing dispositive motions has passed, *id.* at 1; and a trial date is set for May 18–28, 2004, Order of Dec. 12, 2003, at 2. As plaintiff argues, the fact that plaintiff is precluded from filing any dispositive motions based on the additional affirmative defenses that intervenor-applicants assert in the answer accompanying their motion to intervene is particularly prejudicial. *See* Pl.'s Resp. at 31 (stating that the consequence of not being able to file any additional dispositive motions "would be that plaintiff would have to engage in substantial additional discovery on these defenses and the legal issues would be left open for trial"). Although intervenor-applicants argue that "[p]laintiff will have to address these issues whether the Metamora Group intervenes or not," The Metamora Group's Reply Brief in Support of Their Motion to Intervene (Metamora Reply) at 3, the important circumstance here is that plaintiff had an opportunity to file dispositive motions based on defendant's answer, but, due to intervenor-applicants' delay, is precluded from filing any dispositive motions based on intervenor-applicants' answer.

In the differing circumstances of *Freeman v. United States,* this court found that "any prejudice to the existing parties would be minimal since there are no pending dispositive motions." 50 Fed.Cl. 305, 308 (2001). In the present case, there is a pending motion for partial summary judgment filed by plaintiff on May 14, 2003, *see* Plaintiff's Motion and Brief for Partial Summary Judgment on Liability (displaying a date stamp of May 14, 2003), and a pending cross-motion for partial summary judgment filed by defendant on December 1, 2003, *see* Cross–Motion for Summary Judgment, Opposition to Plaintiff's Motion for Partial Summary Judgment, and Memorandum in Support (displaying a date stamp of Dec. 1, 2003). Allowing intervenor-applicants to intervene now would prejudice the parties since the briefing on these motions was completed on January 13, 2004. *See* Defendant's Reply Brief in Support of Cross–Motion for Summary Judgment (displaying a date stamp of Jan. 13, 2004).

Intervenor-applicants argue that they will suffer prejudice if they are not allowed to intervene because their ability to protect their interest will be impeded by a judgment or settlement. Metamora Reply at 5, 11. Plaintiff argues that intervenor-applicants "are free to litigate all the[ ] issues [raised in their answer] in the Federal District Court for the Eastern District of Michigan." Tr. at 41. Numerous courts have found the prejudice to potential intervenors to be slight and intervention to be inappropriate "where relief is available elsewhere." *Cheyenne–Arapaho Tribes of Indians,* 1 Cl.Ct. at 296 n. 4; *see also TRW Envtl. Safety Sys., Inc. v. United States,* 16 Cl.Ct. 516, 519 (1989) (stating that the potential intervenor "would not appear to be substantially prejudiced by a denial of its motion, for [the applicant] retains its right to bring a separate action"); *Ackley v. United States,* 12 Cl.Ct. 306, 309 (1987) (finding that the applicants' rights would not be prejudiced because they had filed a separate action and their pursuit of that claim would not be inhibited by denying intervention); *Cheyenne–Arapaho,* 1 Cl.Ct. at 296 (finding the

prejudice to the potential intervenors to be "slight, if indeed, existent" where they "made no showing that other future avenues of relief ... are totally unavailable"). This court can only determine whether plaintiff is entitled to just compensation; it cannot determine whether members of the Metamora Group must pay defendant the amount of any judgment the court may grant in this case. Intervenor-applicants can protect their interest by contesting in another forum any attempt by defendant to seek reimbursement for any settlement or judgment that may occur in this case.[5] *See BASF–INMONT Corp.*, 819 F.Supp. at 622–23 (setting out the dispute resolution procedures for resolving "disagreements concerning the meaning, application or implementation of th[e] Consent Decree"). While it is possible to speculate that intervenor-applicants may be impaired in some way in their ability to protect their interest by having to dispute their possible liability to reimburse the United States in a different forum, the court finds that the prejudice to the parties if intervention is granted outweighs any prejudice to the intervenor-applicants. This fact, coupled with intervenor-applicants' sixteen-month delay in filing their motion to intervene, leads the court to conclude that intervenor-applicants' motion to intervene is untimely. Although a finding that a motion to intervene is untimely is a bar to granting both intervention of right and permissive intervention, the court nonetheless examines the other factors in the intervention analysis.

## C. Intervention of Right

In order to succeed on a motion to intervene of right under RCFC 24(a), in addition to showing timeliness, applicants "must show that: (1) they have an interest relating to the property or transaction that is the subject of the action; (2) without intervention the disposition of the action may, as a practical matter, impair or impede the applicants' ability to protect that interest; and (3) their interest is inadequately represented by the existing parties." *Freeman*, 50 Fed.Cl. at 308–09. An applicant must demonstrate the existence of each factor. *See id.* (stating that intervention of right must be granted "[i]f the applicants satisfy each element" of the applicable provision of Rule 24(a)). If an applicant fails to demonstrate any one of these factors, the application to intervene of right is denied.

### 1. Interest

■ The members of the Metamora Group and plaintiff agree that intervenor-applicants' interest in this suit is that of a potential indemnitor.[6] *See* Metamora Reply at 7 (stating that intervenor-applicants have an "interest arising from an asserted indemnification obligation"); Pl.'s Resp. at 11 ("The Metamo-

---

**5.** The District Court for the Eastern District of Michigan has continuing jurisdiction over disputes arising under the Consent Decree:

> This Court will retain jurisdiction for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, or relief as may be necessary or appropriate for the construction or modification of this consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIV hereof.

*BASF–INMONT Corp.*, 819 F.Supp. at 630 (Consent Decree ¶ 81).

**6.** Intervenor-applicants may be liable under paragraph 23 of the Consent Decree, *see* Tr. at 10–11 (containing a statement by intervenor-applicants that paragraph 23 is the "probably the most relevant provision" regarding reimbursement), which states:

> To the extent that the Facility or other areas where Work is to be performed hereunder is presently owned by persons other than Settling Defendants, Settling Defendants shall use best efforts to secure from such persons access for Settling Defendants' contractors, the United States, the State and their authorized representatives, as necessary to effectuate this Consent Decree. If access is not obtained despite best efforts within 14 days of the date of execution of this Decree by Settling Defendants, Settling Defendants shall promptly notify the United States. The United States thereafter may assist Settling Defendants in obtaining access, to the extent necessary to effectuate the remedial action for the Facility, using such means as it deems appropriate. *The United States' costs in this effort, including* attorney's fees and other expenses and *any compensation that the United States may be required to pay to the property owner, shall be considered costs of response and shall be reimbursed by Settling Defendants* in accordance with Section XVI of this Decree (Reimbursement).

*BASF–INMONT Corp.*, 819 F.Supp. at 620 (emphasis added).

ra Group's interest is only an economic interest as the United States' indemnitor under a CERCLA consent decree."). Both intervenor-applicants and plaintiff agree that intervenor-applicants do not have an interest in the property allegedly taken. *See* Tr. at 16 (statement by intervenor-applicants that they "don't have a property interest in the land"); Pl.'s Resp. at 11 ("The Metamora Group's interest is only an economic interest . . . ."). Intervenor-applicants and plaintiff disagree about whether the interest of a potential indemnitor is sufficient to meet the interest requirement of Rule 24(a). *See* Metamora Reply at 8 ("[A]n interest based on an indemnification obligation constitutes a sufficient interest for purposes of intervention as of right."); Pl.'s Resp. at 10 ("The Metamora Group's duty to indemnify the United States . . . is not a direct, legally protectable interest in the property or transaction in this action.").

The interest of applicants in the property or transaction must be " ' "of such a *direct* and *immediate* character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.' " The interest thus may not be either indirect or contingent. The interest must also be a 'legally protectable interest.' " *Am. Mar. Transp.*, 870 F.2d at 1561 (citations omitted). A legally protectable interest is " 'one which the substantive law recognizes as belonging to or being owned by the applicant.' " *Id.* (citation omitted).

The court finds that intervenor-applicants do not have an interest sufficient to support intervention of right because their interest does not "relat[e] to . . . the subject of the action," RCFC 24(a), and because non-property interests generally do not support the granting of intervention of right, *see* Moore, *supra*, § 24.03[2][b], at 24–31 ("[N]on-property interests usually are not sufficient to support intervention as of right."). The interest of the members of the Metamora Group is in the amount they might be required to pay to defendant as reimbursement if plaintiff wins the present case. Numerous

courts have found that a potential intervenor's interest in "the amount it will have to pay . . . if [one of the parties] wins" does not constitute an interest in the subject matter of the action. *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods.*, 725 F.2d 871, 875 (2d Cir.1984); *see also, e.g., DSMC, Inc. v. Convera Corp.*, 273 F.Supp.2d 14, 25–26 (D.D.C.2002) (stating that an interest in a lawsuit based on the potential of indemnification obligations if a party is held liable does not justify intervention of right). The reasoning of these cases is that "[t]here are two contingencies that precede any liability of [the applicant]: first, [a party in the position of defendant here] must lose this lawsuit, and second, [that party] must succeed in holding [the applicant] liable for indemnification." *DSMC*, 273 F.Supp.2d at 25; *see also Restor–A–Dent Dental Labs.*, 725 F.2d at 875 (describing the same two contingencies). Similarly, here, intervenor-applicants do not have an interest in the subject matter of this case because their asserted interest is contingent, that is, they would only be liable to defendant if defendant loses this case and if defendant succeeds in asserting its rights in a separate forum under the Consent Decree.[7] Thus, the members of the Metamora Group do not have "an interest relating to the property or transaction which is the subject of the action." RCFC 24(a).

Intervenor-applicants cite two cases, *Tri–Wall Containers, Inc. v. United States*, 187 Ct.Cl. 326, 408 F.2d 748 (1969), and *Earth Resources Corp. v. United States*, 44 Fed.Cl. 274 (1999), as precedent for the proposition that "an interest based on an indemnification obligation constitutes a sufficient interest for purposes of intervention as of right." Metamora Reply at 8. However, these cases are inapposite. Both cases cited by intervenor-applicants are patent infringement cases where the intervenor had agreed to indemnify the defendant United States. *See Tri–Wall Containers*, 187 Ct.Cl. at 332, 408 F.2d 748 (stating that a third party intervened because it "had indemnified the defendant

---

7. Intervenor-applicants concede that if defendant loses in the present case, they will not automatically pay the defendant the amount of the judgment. *See* Tr. at 20 (statement by intervenor-

applicants that they "not planning on getting the checkbook out" in the event that defendant loses this case).

United States against certain infringement claims"); *Earth Res. Corp.*, 44 Fed.Cl. at 277 (stating that a third party "intervened because it agreed to indemnify the United States [defendant]"). In these patent infringement suits, the plaintiff sues the United States under 28 U.S.C. § 1498, *see, e.g., Tri–Wall Containers,* 187 Ct.Cl. at 327, 408 F.2d 748 ("This is a patent suit under Title 28 U.S.C. § 1498 ...."); *Earth Res. Corp.,* 44 Fed.Cl. at 275 (stating that the action was "brought against the United States under 28 U.S.C. § 1498"), which allows the owner of a patent to sue the United States " '[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same,' " *Earth Res. Corp.,* 44 Fed.Cl. at 275 n. 1 (quoting 28 U.S.C. § 1498(a)). In such cases, the plaintiff alleges that it is the owner of the patent and that the United States is using the patent without authorization. *See, e.g., Tri–Wall Containers,* 187 Ct.Cl. at 327, 408 F.2d 748 ("[P]laintiff seeks to recover reasonable and entire compensation for the alleged unauthorized use by defendant [United States] of a patented invention."); *Earth Res. Corp.,* 44 Fed.Cl. at 277 (stating that plaintiff sued the United States "for authorizing the [intervenor] to infringe patents held by [plaintiff]" to produce inventions used by the Departments of Energy and the Army). However, the intervenor is the one who creates the invention described in the patent and provides it to the United States. *See, e.g., Tri–Wall Containers,* 187 Ct.Cl. at 327, 341, 408 F.2d 748 (stating that the intervenor "manufactured and sold to the United States" a product for which plaintiff claimed patent rights); Defendant's Motion for Third Party Notice Pursuant to RCFC 14(a)(1), at 1, in *Earth Res. Corp.,* 44 Fed.Cl. 274 ("[The intervenor] is a contractor responsible for the manufacture of at least one of the accused systems for the government."). The United States has thus compensated the intervenor for creating a product that allegedly infringes a patent that is neither owned by nor licensed to the intervenor or the United States. As plaintiff argues, this involves a "situation where the United States has already paid out money [to the intervenor]" prior to commencement of the patent infringement suit. Tr. at 46. Without an indemnification agreement, if plaintiff wins the suit, the United States would be paying twice for the same product-once to the intervenor and then once to the patent owner as " 'reasonable and entire compensation,' " *Earth Res. Corp.,* 44 Fed.Cl. at 275 n. 1 (quoting 28 U.S.C. § 1498(a)), for the use of the patent.

The situation of the intervenors in those cases is readily distinguishable from this case-where defendant has not paid intervenor-applicants any money and the interest of intervenor-applicants remains contingent. *See* Tr. at 46 (statement of plaintiff: "That is not the situation here where we have the United States actually paying out money because they haven't paid it yet, so the interest hasn't arisen.").

Additionally, the patent infringement cases often allow a third party into the case through RCFC 14(a)(1). *See, e.g.,* Order of Oct. 15, 1997, in *Earth Res. Corp.,* No. 97–375C (granting defendant's motion for third party notice pursuant to Rule 14(a)(1)). Under Rule 14(a), the United States is asserting a claim against a third party. Rule 14(a) requires the assertion of an interest for the addition of a party to the suit that is different from the interest required by Rule 24(a). *Compare* RCFC 14(a)(1) (requiring the United States to have paid money to a third party "in respect of the transaction or matter which constitutes the subject matter of the suit") *with* RCFC 24(a) (requiring "an interest relating to the property or transaction which is the subject of the action"). Thus, the cases allowing the addition of a party under Rule 14(a)(1) are inapplicable to intervention under Rule 24(a).[8] Intervenor-appli-

---

8. The court also notes that neither case cited by intervenor-applicants discusses the application to intervene. *See Tri–Wall Containers,* 187 Ct.Cl. at 332, 408 F.2d 748 (stating only that a third party intervened because it "had indemnified the defendant United States"); *Earth Res. Corp.,* 44 Fed.Cl. at 277 (stating only that a third party "intervened because it agreed to indemnify the United States"). Additionally, *Tri–Wall Containers* was decided under Rule 28 of the Rules of the Court of Claims (RCC), which differs significantly from RCFC 24. *Compare* RCC 28(a), *Pennsyl-*

cants have cited no persuasive or binding authority holding that a potential indemnification obligation is a sufficient interest to warrant intervention of right. Indeed, this absence of authority is not surprising. Here, the intervenor-applicants have consented to indemnify the United States for the costs of remediating pollution. Should those remediation costs eventually include payment for takings claims adjudicated against the United States, the court discerns no legally protectable interest of intervenor-applicants to avoid their indemnification obligation. In any case, this court, under its limited jurisdiction, is not charged with determining the legal obligations of intervenor-applicants to defendant in this matter. The court finds that intervenor-applicants do not have "an interest relating to the property or transaction which is the subject matter of the action." RCFC 24(a).

## 2. Applicants' Ability to Protect Their Interest

█ Intervenor-applicants argue that their ability to protect their interest will be impaired or impeded because if plaintiff prevails in this suit or if the parties settle, "the Metamora Group would be placed in the difficult and inefficient position of disputing the amount in a separate proceeding," Metamora Mem. at 11, where the court will give deference to this court, Tr. at 25. Plaintiff argues that "[a]ny judgment adjudicating the rights of plaintiff and the United States does not collaterally estop the Metamora Group from asserting any rights it may have under the consent decree." Pl.'s Resp. at 21. Additionally, plaintiff states that "[a] judgment or settlement in this action would have no *stare decisis* effect on the Metamora Group.

This case is limited to a determination of just compensation." *Id.*

"The potential stare decisis effect of a decision often supplies the 'practical impairment' required by Rule 24(a)." *Anderson Columbia Envtl.*, 42 Fed.Cl. at 882; *see also Freeman*, 50 Fed.Cl. at 309 ("When analyzing this element, the court has considered the impact of *stare decisis* ...."). The greater the precedential impact of a decision on the applicant, the more likely a court is to find that the applicant's interest is impaired. *See Anderson Columbia Envtl.*, 42 Fed.Cl. at 882 ("If the court's decision will have a limited precedential impact on the prospective intervenor, there is little threat of impairment."). "A prospective intervenor is ... not likely to suffer impairment of its interests where it is free to assert its rights in a separate action. Moreover, the mere inconvenience caused by requiring the prospective intervenor to litigate the matter separately does not constitute the impairment required by Rule 24(a)." *Id.* (citation omitted).

This case is limited to a determination of whether defendant took plaintiff's property and whether plaintiff is entitled to just compensation. Both parties acknowledge that intervenor-applicants could, under the Consent Decree, challenge their liability for any award that this court may grant to plaintiff in the District Court for the Eastern District of Michigan.[9] *See* Tr. at 59 (intervenor-applicants' comment evaluating the effect of a judgment in this court on "a district judge in Michigan in a suit to enforce this consent decree"); Pl.'s Resp. at 23 ("Nothing in a judgment from this Court prevents the Metamora Group from disputing in the district court any fact or evidence in this action.").

---

*vania Ralroad Co. v. United States*, 165 Ct.Cl. 1, 28, 1964 WL 8557 (1964) (separately paginated publication of the rules) (permitting "anyone ... to intervene in an action ... where the applicant has a pecuniary interest in the subject matter of the main action") *with* RCFC 24(a) (permitting "anyone ... to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject matter of the action").

9. In order for defendant to be reimbursed by intervenor-applicants for any award this court may grant, defendant would first have to submit

a claim for reimbursement to intervenor-applicants. *See BASF–INMONT Corp.*, 819 F.Supp. at 624 (stating, in paragraph fifty of the Consent Decree, that the United States must submit its claims for costs incurred). If intervenor-applicants challenge the claim, then there is a mechanism to resolve the dispute under section XIV of the Consent Decree. *See id.* at 622–23 (setting out the dispute resolution procedures). Under paragraph eighty-one of the Consent Decree, the District Court for the Eastern District of Michigan "retain[s] jurisdiction ... to resolve disputes in accordance with Section XIV." *Id.* at 630.

In a dispute between defendant and intervenor-applicants before a Michigan district court, the district court would not be bound by stare decisis to follow this court's decision. Although intervenor-applicants argue that "as a practical matter," *see* Tr. at 59 (emphasizing these words in RCFC 24(a)), a Michigan district court will defer to this court's ruling, *see* Tr. at 22 ("[A]t a minimum ... there will be deference given by the Court in Michigan to [this court's] rulings about such issues as whether the compensation is just, if compensation were awarded."), the fact is that a Michigan district court will not be bound by this court's decision. While it may be true that this court's decision will operate as precedent to which the district court may look, it does not operate as stare decisis, which is "[t]he doctrine of precedent, under which it is *necessary* for a court to follow earlier judicial decisions when the same points arise again in litigation," *Black's Law Dictionary* 1414 (7th ed.1999) (emphasis added). Thus, the disposition of this action does not impair or impede intervenor-applicants' ability to protect their interest. *See* RCFC 24(a) (requiring, in order to grant intervention of right, that potential intervenors be "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect [their] interest").

### 3. Inadequate Representation

■ The final element that applicants must demonstrate in order to be granted intervention of right is that "their interest is inadequately represented by the existing parties." *Freeman*, 50 Fed.Cl. at 308–09. When applicants seek to intervene as a party on the side of the United States, the government is presumed adequately to represent the applicants' interest. *See id.* at 310 (stating that the government is presumed to represent an applicant's interest); *Anderson Columbia Envtl.*, 42 Fed.Cl. at 883 ("[W]hen the government is a party, it is presumed to represent the would-be intervenor's interest."). "The applicants may rebut the presumption of adequate representation through a showing of collusion, adversity of interest, or nonfeasance." *Freeman*, 50 Fed.Cl. at 310; *see also Anderson Columbia Envtl.*, 42 Fed.Cl. at 883 ("To rebut this presumption, the would-be intervenor must show collusion, adversity of interest, or nonfeasance.").

■ Intervenor-applicants argue that an adversity of interest exists between defendant and intervenor-applicants because "the Government's interest in minimizing damages is not as great as the Metamora Group's because the Government intends to seek reimbursement of any damages from the Metamora Group." Metamora Reply at 12. Intervenor-applicants have not asserted that there is collusion between plaintiff and defendant or nonfeasance by defendant. Plaintiff states that intervenor-applicants "fail[ ] to rebut" the presumption of adequate representation. Pl.'s Resp. at 24.

The court notes, first, that the difference in the interests of defendant and intervenor-applicants is, at most, one of degree and not of kind. The court also views with skepticism the suggestion of intervenor-applicants that, in effect, defendant has "nothing to lose" by failing to mount a vigorous defense of the sovereign. The ability of the United States to enter into cooperative agreements for remedial efforts, such as the Consent Decree, could be significantly compromised if the United States failed to defend against subsequent takings claims. Moreover, both defendant and intervenor-applicants seek to defeat plaintiff's claim for just compensation and, barring that, to minimize any just compensation that this court may award. Because the ultimate goal of both defendant and intervenor-applicants is the same, intervenor-applicants have not demonstrated that there is an "adversity of interest" between intervenor-applicants and the United States.

Second, and perhaps most importantly, the court finds that defendant adequately represents intervenor-applicants because, in the actions giving rise to plaintiff's takings claim, intervenor-applicants were acting as representatives of the EPA. In 1998, the District Court for the Eastern District of Michigan enjoined plaintiff from interfering with the right of defendant, "its contractors and *representatives* ... from entering on or at the Metamora Landfill Site." Compl. Ex. 4 at 1 (containing *United States v. John R. Sand & Gravel Co.*, No. 97–75497 (E.D.Mich. Mar. 23,

1998) (order granting preliminary injunction)) (emphasis added). Further, "[t]he Court acknowledge[d] that the Metamora Landfill Settling PRP Group ha[d] been designated as an *EPA representative* for purposes of implementation of EPA's selected remedies." *Id.* at 1–2 (emphasis added). Intervenor-applicants recognized that the Michigan Court referred to them as "representative[s]" of the EPA. *See* Tr. at 18 ("[I]f [the Michigan court] found that we were the representatives of the United States, then that's what [it] found."). Even without the Michigan court's explicit statement that intervenor-applicants are "representative[s]" of the United States, the actions of intervenor-applicants must have been on behalf of the government because the present case, a takings claim, could not have arisen if the intervenor-applicants, private parties, were acting on their own behalf. A takings claim is a cause of action that may only be brought against the sovereign. It is therefore appropriate that the government's interest be uniquely represented by the United States.

Intervenor-applicants have failed to meet any of the requirements for intervention of right under RCFC 24(a). The motion to intervene was untimely filed; intervenor-applicants do not have an interest sufficient to grant intervention of right; intervenor-applicants' ability to protect their interest will not be impaired or impeded by denying intervention; and defendant adequately represents intervenor-applicants' interests.

D. Permissive Intervention

■ The court has broad discretion in deciding whether to allow permissive intervention. *See* Moore, *supra*, § 24.10[1], at 24–55 ("Trial courts possess 'broad discretion in resolving applications for permissive intervention.'" (citation omitted)). In assessing whether a potential intervenor should be granted permissive intervention, the court must decide that a would-be intervenor's application is timely and that there is a "question of law or fact in common" between the applicant's claim or defense and the main action. RCFC 24(b). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice

the adjudication of the rights of the original parties." *Id.* Because the court has already decided that intervenor-applicants' motion to intervene is untimely, permissive intervention is inappropriate. However, even if intervenor-applicants' motion was timely, intervenor-applicants fall short of meeting the standard for permissive intervention.

Intervenor-applicants state that their interest and the main action "share a common question of law and fact to the extent that the Metamora Group's ultimate objective is to dispute and/or reduce the liability associated with [plaintiff's] takings claim." Metamora Mem. at 14. The court agrees with plaintiff that "[s]haring the same objective is not the same as sharing questions of law or fact." Pl.'s Resp. at 33. Intervenor-applicants' claim or defense relates to their potential liability under the Consent Decree for any award this court may grant to plaintiff as against defendant. The main action here is a takings claim where the only issue is whether plaintiff is entitled to just compensation. Intervenor-applicants seek to intervene in this case to assist defendant in its defense against plaintiff's takings claim. Intervenor-applicants cannot, however, contest their ultimate liability, whatever it may be, in this court. The claim or defense that intervenor-applicants' have on their own behalf does not have a question of law or fact in common with the main action.

The court must also "consider whether an intervenor would burden or prolong the proceedings by filing a counterclaim or motions on extraneous issues." *Freeman,* 50 Fed.Cl. at 310. While intervenor-applicants stated that they do not wish to do so, *see* Tr. at 15 ("We do not want to do anything that would delay the briefing schedule. We do not want to ... interject any new issues ...."), it would be unrealistic to conclude that granting intervention would not affect this litigation. In the present case, both intervenor-applicants and defendant are attempting to prove that plaintiff does not have a valid takings claim.

The duplicative nature of the evidence will not shed any additional light on this issue. The ultimate objectives of the [intervenor-]applicants and defendant are the

same, and there is a presumption that the government adequately represents the [intervenor-]applicants' interests. Allowing the [intervenor-]applicants to intervene in this case would threaten expedient disposition of this action.

*Freeman,* 50 Fed.Cl. at 311.

In situations similar to the one here, where a plaintiff has sued the United States and an applicant seeks to intervene as a defendant, courts have found permissive intervention to be inappropriate because the applicant does not have a claim against the United States. *See, e.g., Hage v. United States,* 35 Fed.Cl. 737, 742 (1996) (denying permissive intervention because the applicants "do not have a claim against the United States"); *Karuk Tribe v. United States,* 27 Fed.Cl. 429, 432 (1993) (denying permissive intervention because "the applicant-intervenors do not have a claim or defense against the United States" and the "court entertains suits against the government"). These rulings stem from the nature of this court's jurisdiction. Under the Tucker Act this court has

> jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2000).[10] This court would not have jurisdiction over defendant's claim for reimbursement against intervenor-applicants.

In the present circumstances, the court finds permissive intervention inappropriate. Intervenor-applicants have failed to meet the threshold requirement for granting permissive intervention under Rule 24(b) because they untimely filed their motion to intervene. In addition, there is no common question of law or fact between intervenor-applicants' claim or defense and the main action; allowing intervention would burden the proceedings; and intervenor-applicants do not have a claim against the United States.

**10.** While these cases discuss the lack of a claim against the United States as a basis for denying permissive intervention, given the limited juris-

**III. Conclusion**

For the foregoing reasons, The Metamora Group's Motion to Intervene is DENIED.

IT IS SO ORDERED.

diction of this court, their reasoning applies with equal force to intervention of right under Rule 24(a).